BOLT TECHNOLOGY CORPORATION *v.* OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES
(13648)
OLIN CORPORATION, INC. *v.* COMMISSIONER OF REVENUE SERVICES
(13652)
PERKIN-ELMER CORPORATION *v.* COMMISSIONER OF REVENUE SERVICES
(13653)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued October 11—decision released December 12, 1989

*Gordon R. Erickson,* for the appellant in the first case (plaintiff Bolt Technology Corporation).

*George G. Vest,* with whom, on the brief, was *Roger R. Caridad,* for the appellants in the second and third cases (plaintiffs Olin Corporation, Inc., and Perkin-Elmer Corporation).

*Robert L. Klein,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

GLASS, J. The plaintiffs, Bolt Technology Corporation, Olin Corporation, Inc., and Perkin-Elmer Corporation (taxpayers), brought appeals to the Superior Court from a determination of the defendant commissioner of revenue services (commissioner). Specifically, the commissioner disallowed certain commission expenses that each of the taxpayers claimed on its Connecticut cor-

poration business tax return. In the Superior Court, the taxpayers and the commissioner entered into stipulations for reservation, and the Superior Court agreed to reserve the issue presented in the stipulations to the Appellate Court.[1] This court then transferred the reservations to itself pursuant to Practice Book § 4023.

The issue in these cases, that comes to us by way of reservation, is framed as follows: "Are the sales commissions paid by Plaintiff to International, and deducted on Plaintiff's federal income tax return, expenses related to the dividends received by Plaintiff from International within the meaning of Connecticut General Statutes § 12-217 (a) (D) (1) so that the commissions are not deductible to the extent of the dividends received in determining Plaintiff's Connecticut Corporation Business Tax liability?"

The stipulations indicate that the plaintiff, Bolt Technology Corporation (Bolt), formerly Bolt Associates, Inc., is a corporation duly organized and existing under the laws of Connecticut. Bolt incorporated Bolt International Corporation (International) in Connecticut. International qualified as a domestic international sales corporation (DISC) and elected to be taxed as a DISC, pursuant to § 992 of the Internal Revenue Code of 1954, as amended to 1982. Bolt is the sole stockholder and parent corporation of a DISC, International. In general, § 992 of the Internal Revenue Code provides that a DISC is a corporation, incorporated in any state, whose income is derived primarily from export sales

---

[1] The plaintiffs, Bolt Technology Corporation, Olin Corporation, Inc., and Perkin-Elmer Corporation, filed separate lawsuits in the Superior Court against the defendant, Orest T. Dubno, commissioner of revenue services. The question of law reserved is identical in each case, the only difference being the reference in the reservation to different plaintiffs and the corresponding different domestic international sales corporations. Since the stipulated facts peculiar to each case do not alter our determination of the reservation of each case, we use the stipulated facts of only one case, Bolt Technology Corporation, for an understanding of the issue.

and lease transactions and certain other export related activities, and whose assets consist principally of qualified export assets. Its function is to handle the export sales and leasing activities of a United States manufacturer. A DISC is not subject to federal income taxes. Internal Revenue Code § 991. Approximately one half of the income of a DISC, however, is taxed currently to its shareholders as constructive dividends, even though not distributed, and the balance is not taxed until actually distributed, or until the DISC shares are transferred in a taxable transaction, or the corporation ceases to qualify as a DISC. Internal Revenue Code § 995; Internal Revenue Code Reg. § 1.995-2.

A DISC may operate either on a commission agent basis (commission agent DISC), or on a buy-sell basis (buy-sell DISC). The commission agent DISC sells the manufacturing parent's product to foreign customers for a sales commission without taking title to the product. These commissions constitute the only operating income of the commission agent DISC. A buy-sell DISC actually takes title to property transferred from its manufacturing parent and earns its income from the resale of that property. The difference between the price at which the property is transferred to the DISC from its manufacturing parent, and the price at which the DISC resells the property to foreign customers, constitutes the income of the buy-sell DISC. Under the Internal Revenue Code and its regulations, the price at which the parent transfers the property to its DISC ordinarily is in excess of cost, but never less than the property cost. Furthermore, a buy-sell DISC acts as a principal when it sells goods, and not as an agent. The selling expenses incurred by a buy-sell DISC are deducted on the DISC's income tax return, not on the parent's income tax return.

The DISCs owned by the taxpayers in each of these cases operated as commission agent DISCs. For example, International was a commission agent DISC that sold products on a commission basis for its parent, Bolt. International did not take title to products but sold Bolt's products to foreign customers for a sales commission. International's only income consisted of the commissions it received from Bolt for the sale of Bolt's products to foreign customers, and interest income on producer loans to Bolt. For the fiscal year ending June 30, 1982, the gross income of International consisted of commissions received from Bolt of $2,904,687 and interest income on producer loans of $24,000.

For federal income tax purposes for the fiscal year ending June 30, 1982, each of the taxpayers included in its gross income the dividends attributable to its DISCs. Additionally, for federal income tax purposes, the taxpayers deducted from their gross income the sales commissions paid to their DISCs.[2] Bolt included on its federal income tax return, as an item of gross income, deemed dividends attributable to International in the amount of $1,736,313. Moreover, Bolt deducted from its gross income the sales commissions paid to International in the amount of $2,904,687.

For the fiscal year ending June 30, 1982, the taxpayers filed Connecticut corporation business tax returns on which they deducted from their gross income the sales commissions paid to their DISCs and the dividends received from their DISCs. On its state tax return, Bolt deducted from its gross income the sales commissions of $2,904,687 paid to International as well as the dividends of $1,736,313 received from International.

---

[2] Sales commissions paid by a manufacturing parent to a commission agent DISC will usually equal or exceed the dividends received from the DISC since the dividend is generally computed by dividing the sales commissions by two.

The commissioner, upon audit, asserted a deficiency against the taxpayers for the fiscal year of 1982. The commissioner disallowed the deduction of sales commissions paid by the taxpayers to the extent of dividends received by the taxpayers from their DISCs. The commissioner based his disallowance on the premise that the sales commissions, to the extent of the dividends paid by the DISCs to the taxpayers, were expenses related to dividends paid by the DISCs to the taxpayers within the meaning of General Statutes § 12-217 (a) (D) (1),[3] and were, therefore, not deductible in an amount equal to the dividends received by the taxpayers from their DISCs.[4]

The disallowance of Bolt's deduction of that portion of its sales commissions paid to International equal to the dividends received from International resulted in an additional tax to Bolt of $79,233.35 together with interest of $17,167.25. Under protest, Bolt and the other taxpayers paid the additional tax and interest, and then requested a refund and a hearing. The commissioner denied the taxpayers' protests in reliance on the provisions of § 12-217 (a) (D) (1). The taxpayers appealed the commissioner's adverse determinations

[3] General Statutes (Rev. to 1981) § 12-217 (a), as amended by Public Acts 1981, No. 81-411, §§ 1, 3, provides in pertinent part: "DEDUCTIONS FROM GROSS INCOME. (a) In arriving at net income as defined in section 12-213 . . . there shall be deducted from gross income, (A) all items deductible under the federal corporation net income tax law . . . (D) additionally . . . all dividends . . . including dividends received from a DISC or former DISC as defined in Section 992 of the Internal Revenue Code of 1954, as amended, and dividends deemed to have been distributed by a DISC or former DISC as provided in Section 995 of said Internal Revenue Code; except no deduction shall be allowed for (1) expenses related to dividends which are allowable as a deduction or credit under the federal corporation net income tax law . . . ."

[4] Although not included in the stipulations and not material to the issue presented by reservation, it is noted that in the Olin Corporation, Inc. case, the commissioner disallowed the deduction of all commission expenses because, in that case, the dividends exceeded the commissions.

to the Superior Court, pursuant to General Statutes
§ 12-237.[5] In that court, each taxpayer requested that
the same question be reserved to the Appellate Court
for advice on the stated issue of law. The trial court
granted the request, and thereafter, we transferred the
reservation to this court.

I

The taxpayers' principal claim is one of statutory con-
struction. According to the taxpayers, the commis-
sioner has interpreted the amendment of § 12-217 by
Public Acts 1981, No. 81-411[6] in a manner at variance
with its legislative history and the rules of statutory
construction. Specifically, the taxpayers argue that the
legislative purpose of the 1981 amendment was to elim-
inate, in part, the corporation business tax on dividends,

---

[5] "[General Statutes] Sec. 12-237. APPEAL. Any taxpayer aggrieved
because of any order, decision, determination or disallowance of the com-
missioner of revenue services under the provisions of this part may, within
one month after service upon the taxpayer of notice of such order, deci-
sion, determination or disallowance, take an appeal therefrom to the supe-
rior court for the judicial district of Hartford-New Britain, which shall be
accompanied by a citation to the commissioner of revenue services to appear
before said court. Such citation shall be signed by the same authority, and
such appeal shall be returnable at the same time and served and returned
in the same manner, as is required in case of a summons in a civil action.
The authority issuing the citation shall take from the appellant a bond or
recognizance to the state of Connecticut, with surety to prosecute the appeal
to effect and to comply with the orders and decrees of the court in the prem-
ises. Such appeals shall be preferred cases, to be heard, unless cause appears
to the contrary, at the first session, by the court or by a committee appointed
by it. Said court may grant such relief as may be equitable and, if such tax
has been paid prior to the granting of such relief, may order the treasurer
to pay the amount of such relief, with interest at the rate of six per cent
per annum, to the aggrieved taxpayer. If the appeal has been taken with-
out probable cause, the court may tax double or triple costs, as the case
demands; and, upon all such appeals which may be denied, costs may be
taxed against the appellant at the discretion of the court, but no costs shall
be taxed against the state."

[6] Number 81-411 of the 1981 Public Acts added to General Statutes
§ 12-217, inter alia, the language contained in § 12-217 (a) (D) (1).

and not, as the commissioner concluded, to disallow the deduction of commission expenses to the extent of dividends that were paid to a parent company by its DISC. We find the taxpayers' argument unpersuasive.

The commissioner correctly concluded that § 12-217 (a) (D) (1), as amended by No. 81-411 of the 1981 Public Acts, disallows deductions of expenses when the following two conditions are present: (1) the expenses must be "allowable as a deduction or credit under the federal corporation net income tax law"; and (2) the expenses must be "related to dividends." In the present cases, the commissioner found that the commissions paid by the taxpayers to their DISCs were indeed deductible under the Internal Revenue Code (26 U.S.C. § 162 [a] [1]) as "ordinary and necessary" business expenses. In fact, the taxpayers have stipulated that they deducted these expenses on their federal income tax returns. Furthermore, the commissioner concluded that the commissions were "expenses related to dividends." Therefore, finding these two conditions present, the commissioner disallowed the taxpayers' deductions of commissions to the extent of the dividends received by the taxpayers. The taxpayers assert, however, that commission expenses are not "related to dividends" for the purpose of § 12-217 (a) (D) (1) in light of the applicable rules of statutory construction and the legislative history of the statute. We disagree.

As a threshold matter, it should be noted that the taxpayers' claims contest the proper treatment of items that, on their Connecticut corporation tax returns, they treated as deductions, for it is stipulated that they deducted from gross income the sales commissions paid to their DISCs and the dividends received from their DISCs. This court has "uniformly adhered to the view that deductions from otherwise taxable income are a matter of legislative grace and hence are strictly con-

strued against the taxpayer. *Harper* v. *Tax Commissioner,* [199 Conn. 133, 142, 506 A.2d 93 (1986)]; *The B. F. Goodrich Co.* v. *Dubno,* [196 Conn. 1, 8–9, 490 A.2d 991 (1985)]; *Yaeger* v. *Dubno,* [188 Conn. 206, 212, 449 A.2d 144 (1982)]." *Skaarup Shipping Corporation* v. *Commissioner,* 199 Conn. 346, 352, 507 A.2d 988 (1986); *Golf Digest/Tennis, Inc.* v. *Dubno,* 203 Conn. 455, 464, 525 A.2d 106 (1987). Thus, in order for the taxpayers to prevail in their challenge of the commissioner's disallowance of these claimed deductions, they must establish "clearly and unambiguously" the right to claim a deduction for commission expenses related to the dividends received from their DISCs. *Golf Digest/Tennis, Inc.* v. *Dubno,* supra, 465.

Because § 12-217 does not define the term "related," "the term must be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977). The word must be given its plain and ordinary meaning; *Carlson* v. *Kozlowski,* 172 Conn. 263, 266, 374 A.2d 207 (1977) . . . ." *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). " 'Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.' " *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986), quoting *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981). Webster's International Dictionary (3d Ed. 1986), in pertinent part, defines the word "related" as, "having relationship: connected by reason of an established or discoverable relation." Black's Law Dictionary defines "related" as "[s]tanding in relation; connected." The sales commissions, therefore, are expenses "related to dividends," because they are directly responsible for generating the dividends paid by the DISCs to their parent companies in each case.

But for the commissions paid to the DISCs, there would have been no dividends, as the commissions were the DISCs' only source of operating income.

The taxpayers argue that such an interpretation of "related" is contrary to legislative intent. An inquiry into legislative history, however, is not appropriate when the language of a statute is unambiguous. "The primary rule of statutory construction is that '[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977); *Houston* v. *Warden,* supra, 251; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971).' " *State* v. *Smith,* 194 Conn. 213, 221, 479 A.2d 814 (1984). " '[I]f the statutory language is clear and unambiguous, there is no room for construction.' [*New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975)]. ' "It has often been said that the legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say. *Weigand* v. *Heffernan,* 170 Conn. 567, 581, 368 A.2d 103 (1976); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975)." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). Where the language used is clear and unambiguous, we will not speculate as to some supposed intention. *Robinson* v. *Unemployment Security Board of Review,* [181 Conn. 1, 6, 434 A.2d 293 (1980)].' *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231, 477 A.2d 988 (1984). Furthermore, where the legislative intent is clearly and unambiguously expressed in the words of the statutes, there is no need for a

review of their legislative history. *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 550, 494 A.2d 564 (1985)." *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). Therefore, since the language of § 12-217 (a) (D) (1) is unambiguous, it is not the province of this court to delve into an examination of the statute's legislative history.

In conclusion, given that deductions are a "matter of legislative grace and hence are strictly construed against the taxpayer"; *Skaarup Shipping Corporation* v. *Commissioner,* supra, 352; and that the plain and ordinary meaning of "related" supports the commissioner's determination, we cannot agree with the taxpayers' assertion that commission expenses are not "related to dividends."

## II

The taxpayers next claim that the commissioner's interpretation of § 12-217 (a) (D) (1) draws an irrational distinction between a commission agent DISC and a buy-sell DISC. In particular, the taxpayers note that § 12-217 "specifically provides that the deduction for dividends includes dividends received from a DISC or former DISC and dividends deemed to have been distributed by a DISC or former DISC." Therefore, the taxpayers argue that the commisioner's "position that commissions paid to a commission agent DISC are not deductible [to the extent of dividends received,] acts to eviscerate this provision of the statute, since disallowance of the commissions paid to the DISC effectively makes these dividends received from the DISC taxable for Connecticut corporation business tax purposes to the extent of the commissions paid." The taxpayers contend that because the commissioner "has admitted in the Stipulation that [he] never attempted to disallow or otherwise adjust any portion of the price at

which inventory is transferred by a manufacturing parent to its buy-sell DISC," that this effectively means that "the deemed dividend paid by the buy-sell DISC (representing approximately one-half of the profits of the DISC) are not taxed in Connecticut at the same rate as that imposed on dividends from a commission agent DISC." The taxpayers maintain that "it seems completely irrational to interpret § 12-217, insofar as it applies to dividends received from these two types of DISCs, so as to effectively impose a significantly higher tax on dividends received from a commission agent DISC than [that] effectively imposed upon dividends received from a buy-sell DISC." We do not agree.

"[W]e have frequently expressed our deference to legislative choices about the equities of classifications in tax statutes. As has the Supreme Court of the United States, we have acknowledged 'the large area of discretion which is needed by a legislature in formulating sound tax policies . . . . [I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification.' *Kellems* v. *Brown,* [163 Conn. 478, 487, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973)], quoting *Madden* v. *Kentucky,* 309 U.S. 83, 87–88, 60 S. Ct. 406, 84 L. Ed. 590 (1940); *Gunther* v. *Dubno,* 195 Conn. 284, 291, 487 A.2d 1080 (1985); *Miller* v. *Heffernan,* [173 Conn. 506, 509–10, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978)]." *Skaarup Shipping Corporation* v. *Commissioner,* supra, 352. The taxpayers in these cases elected to do business by way of a commission agent DISC rather than by a buy-sell DISC. The fact that one method of doing business has less beneficial tax consequences than the other does not warrant this court's interference with the tax policies formulated by the legislature regarding DISCs. We, therefore, decline to

attempt to equalize the tax consequences of the two DISCs by interpreting § 12-217 in a manner contrary to the plain words of the statute.

Equally unavailing is the taxpayers' claim that the commissioner's practice of disallowing the deduction of sales commissions, to the extent of the dividends received by the taxpayers from their DISCs, unconstitutionally discriminates against the taxpayers and violates the equal protection clause of the fourteenth amendment to the United States constitution. We discern no constitutional significance in the taxpayers' voluntary decision to do business one way in preference to another.

We have reviewed the other claims of the taxpayers, including claims based on interpretations of other Connecticut statutes and federal statutes, inconsistent longstanding administrative interpretions of prior law, and the requirements of Connecticut corporation tax forms used prior to the effective date of No. 81-411 of the 1981 Public Acts, and we have concluded that these claims are without merit.

To the question of law reserved, "Are the sales commissions paid by Plaintiff to International, and deducted on Plaintiff's federal income tax return, expenses related to the dividends received by Plaintiff from International within the meaning of Connecticut General Statutes § 12-217 (a) (D) (1) so that the commissions are not deductible to the extent of the dividends received in determining Plaintiff's Connecticut Corporation Business Tax liability?" upon which advice is desired from this court, the answer in all three cases is "Yes."

No costs will be taxed to either party.

In this opinion the other justices concurred.