SLI INTERNATIONAL CORPORATION *v.*
ALLAN A. CRYSTAL, COMMISSIONER
OF REVENUE SERVICES
(15160)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued December 7, 1995—decision released February 27, 1996

*Charles L. Howard,* with whom were *Charles B. Milliken* and *Sheila A. Huddleston,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

KATZ, J. The dispositive issue on appeal is whether the trial court's determinations that the plaintiff, SLI International Corporation, had failed to comply with General Statutes § 12-217 (a) (D) (1) by deducting expenses related to dividends and that the defendant, the commissioner of revenue services (commissioner), had properly adjusted the plaintiff's calculation of net income pursuant to General Statutes § 12-226a by disallowing those deductions for commission expenses because such deductions resulted in an improper or inaccurate reflection of the plaintiff's income are legally and logically correct. We conclude that they are not and, accordingly, reverse the judgment of the trial court to the contrary.

The parties have stipulated to the following facts. The plaintiff, a Delaware corporation with its principal place of business in Stamford, manufactures, markets and distributes aerospace equipment in an international market. It is a wholly owned subsidiary of Smiths Industries, Inc. (Smiths), a Florida corporation, which is not authorized to do business in Connecticut. Smiths Industries International Sales Corporation (Smiths International), also a wholly owned subsidiary of Smiths, is a corporation properly organized under the laws of the United States Virgin Islands and qualifies as a foreign sales corporation (FSC) under 26 U.S.C. § 922 (a) (1994).[1] A FSC is, in essence, "a legal entity through

[1] Title 26 of the United States Code, § 922 (a) (1994), provides: "FSC defined

"For purposes of this title, the term 'FSC' means any corporation—

"(1) which—

"(A) was created or organized—

"(i) under the laws of any foreign country which meets the requirements of section 927 (e) (3), or

"(ii) under the laws applicable to any possession of the United States,

"(B) has no more than 25 shareholders at any time during the taxable year,

"(C) does not have any preferred stock outstanding at any time during the taxable year,

"(D) during the taxable year—

"(i) maintains an office located outside the United States in a foreign country which meets the requirements of section 927 (e) (3) or in any possession of the United States,

"(ii) maintains a set of the permanent books of account (including invoices) of such corporation at such office, and

"(iii) maintains at a location within the United States the records which such corporation is required to keep under section 6001,

"(E) at all times during the taxable year, has a board of directors which includes at least one individual who is not a resident of the United States, and

"(F) is not a member, at any time during the taxable year, of any controlled group of corporations of which a [domestic international sales corporation] is a member, and

"(2) which has made an election (at the time and in the manner provided in section 927 [f] [1]) which is in effect for the taxable year to be treated as a FSC."

Treasury Regulation § 1.921-2 (a) (1995) provides in relevant part: "As defined in [26 U.S.C. § ] 922 (a), an FSC must satisfy the following eight requirements.

which a parent corporation may channel export sales and receive a tax benefit under circumstances in which the export sales would otherwise generate profits taxable at normal rates."[2] P. Day, "Foreign Sales Corporations: Connecticut Tax Implications," 60 Conn. B.J. 307, 310 (1986).

In September, 1987, the plaintiff entered into a sales representative and commission agreement with Smiths

"(i) The FSC must be a corporation organized or created under the laws of a foreign country that meets the requirements of section 927 (e) (3) (a 'qualifying foreign country') or a U.S. possession other than Puerto Rico (an 'eligible possession'). . . .

"(ii) A FSC may not have more than 25 shareholders at any time during the taxable year. . . .

"(iii) A FSC may not have any preferred stock outstanding during the taxable year. . . .

"(iv) A FSC must maintain an office outside of the United States in a qualifying foreign country or an eligible possession and maintain a set of permanent books of account (including invoices or summaries of invoices) at such office. . . .

"(v) A FSC must maintain within the United States the records required under section 6001. . . .

"(vi) The FSC must have a board of directors which includes at least one individual who is not a resident of the United States at all times during the taxable year. . . .

"(vii) A FSC may not be a member, at any time during the taxable year, of any controlled group of corporations of which an interest charge DISC is a member. . . .

"(viii) A FSC must have made an election under section 927 (f) (1) which is in effect for the taxable year. . . .

"In addition, under section 441 (h), the taxable year of a FSC must conform to the taxable year of its principal shareholder. . . ."

[2] Foreign sales corporations are lawful mechanisms of tax avoidance. We agree with the trial court that "[t]ax avoidance is 'taking advantage of lawful tax avoiding devices with the objective of minimizing the tax burden.' *Jones* v. *Garner*, 250 S.C. 479, [486, 158 S.E.2d 909] (1968). Tax avoidance should be contrasted with tax evasion, which in a defamatory sense 'is a crime denoting concealment and an attempt to escape by wrongdoing the payment of taxes due the government.' Id. Judge Learned Hand observed that '[a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes.' *Helvering* v. *Gregory*, 69 F.2d 809, 810 (2d Cir. 1934), citing *United States* v. *Isham*, 84 U.S. (17 Wall.) 496, 506, 21 L. Ed. 728 (1873)."

International for the purpose of selling the plaintiff's products in an international market.[3] Smiths International agreed to perform or to contract for the performance of all activities necessary for the sale of the plaintiff's products as required by 26 U.S.C. § 925 (c) (1994),[4] including marketing and sales promotion, processing customers' orders, and billing. At the end of fiscal years 1988 and 1989, the plaintiff compensated Smiths International for its sales activities by paying to Smiths International commissions properly due pursuant to 26 U.S.C. § 925 (a) (1994).[5] Thereafter, for purposes of its Connecticut corporation business tax for those two years, the plaintiff deducted the commission expenses pursuant to General Statutes § 12-217 (a) (A).[6]

---

[3] Another subsidiary of Smiths, SLI Avionic Systems Corporation, entered into this agreement along with the plaintiff.

[4] Title 26 of the United States Code, § 925 (c) (1994), provides: "Requirements for use of administrative pricing rules

"A sale by a FSC meets the requirements of this subsection if—

"(1) all of the activities described in section 924 (e) attributable to such sale, and

"(2) all of the activities relating to the solicitation (other than advertising), negotiation, and making of the contract for such sale,

"have been performed by such FSC (or by another person acting under a contract with such FSC)."

[5] Title 26 of the United States Code, § 925 (a) (1994), provides: "In general

"In the case of a sale of export property to a FSC by a person described in section 482, the taxable income of such FSC and such person shall be based upon a transfer price which would allow such FSC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceed the greatest of—

"(1) 1.83 percent of the foreign trading gross receipts derived from the sale of such property by such FSC,

"(2) 23 percent of the combined taxable income of such FSC and such person which is attributable to the foreign trading gross receipts derived from the sale of such property by such FSC, or

"(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482).

"Paragraphs (1) and (2) shall apply only if the FSC meets the requirements of subsection (c) with respect to the sale."

[6] General Statutes § 12-217 (a) provides in relevant part: "In arriving at net income as defined in section 12-213, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted

Furthermore, Smiths International declared and paid dividends to Smiths in an amount equal to the commissions Smiths International had received from the plaintiff. The commissions were the sole source of funds for those dividends.

Following an audit of the plaintiff for the fiscal years 1988 and 1989, the commissioner, by invoking his discretion under General Statutes § 12-226a[7] to adjust income where it has been "improperly or inaccurately reflected," disallowed 8/23 of the commission expense deduction for each of the two years.[8] Although the commissioner recognized that Smiths International was properly created and formed under federal law as a valid FSC, he nevertheless considered it to be valid on paper only because it had no economic substance. By determining that it had no economic reality, he felt justified in disregarding its existence in the arrangement between the plaintiff and Smiths. In eliminating Smiths

from gross income, (A) all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year . . . ."

According to 26 U.S.C. § 162 (a) (1) (1994), such commission expenses are deductible because they are ordinary and necessary business expenses and are "a reasonable allowance for . . . compensation . . . ."

[7] General Statutes § 12-226a provides in relevant part: "If it appears to the commissioner of revenue services that any agreement, understanding or arrangement exists between the taxpayer and any other corporation or any person or firm, whereby the activity, business, income or capital of the taxpayer within the state is improperly or inaccurately reflected, the commissioner of revenue services is authorized and empowered, in his discretion and in such manner as he may determine to adjust items of income, deductions and capital, and to eliminate assets in computing any apportionment percentage under this chapter, provided any income directly traceable thereto shall also be excluded from entire net income, so as equitably to determine the tax. . . ."

[8] At oral argument, the commissioner argued that although he was legally permitted to disallow the entire deduction for both years, he had the discretion to choose to disallow only a fraction of it. Because we conclude that the commissioner improperly disallowed the deductions, we need not decide whether, if the commissioner had been authorized to disallow the deductions, he properly exercised his discretion to disallow only 8/23 of them.

International, the commissioner viewed the transaction as one strictly between the plaintiff and Smiths in which the plaintiff paid commissions directly to Smiths and, in return, Smiths paid dividends to the plaintiff. Accordingly, the commissioner considered the commission expenses incurred by the plaintiff to be directly related to the dividends. Because "expenses related to dividends" are not deductible under § 12-217 (a) (D),[9] the commissioner disallowed the deductions.

The plaintiff appealed from the commissioner's decision to the trial court, *Aronson, J.*, which dismissed the appeal.[10] The trial court based its judgment on two theories. First, it found that § 12-217 (a) (D) (1) alone authorized the commissioner's decision to disallow the commission expense deductions. The trial court, in essence, reasoned that the plaintiff had violated that provision by deducting expenses related to dividends. The court also affirmed the commissioner's decision to invoke his discretionary powers under § 12-226a, and agreed with the commissioner that although Smiths International had been properly formed as a sanctioned FSC, it was in essence a paper corporation that had no

---

[9] General Statutes § 12-217 (a) provides in relevant part: "In arriving at net income as defined in section 12-213, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted from gross income . . . (D) additionally, in the case of all taxpayers, all dividends as defined in the federal income tax law effective and in force on the last day of the income year not otherwise deducted from gross income . . . except no deduction shall be allowed for (1) expenses related to dividends which are allowable as a deduction or credit under the federal corporation net income tax law . . . ."

[10] The plaintiff appealed from the commissioner's decision pursuant to General Statutes § 12-237, which provides in relevant part: "Appeal. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court."

economic substance. The court concluded, therefore, that the commissioner had properly invoked his authority under § 12-226a to reorganize the transaction as one solely between the plaintiff and Smiths and, consequently, to adjust the plaintiff's income. Thereafter, the plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

"In this case, the trial court's determinations were based on a record that consisted solely of a stipulation of facts, written briefs, and oral arguments by counsel. The trial court had no occasion to evaluate the credibility of witnesses or to assess the intent of the parties in light of additional evidence first presented at trial. The record before the trial court was, therefore, identical with the record before this court. In these circumstances, the legal inferences properly to be drawn from the parties' definitive stipulation of facts raise questions of law rather than of fact. Cf. *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 545, 606 A.2d 684 (1992); *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 482 n.7, 586 A.2d 1157 (1991); *Canaan National*

*Bank* v. *Peters*, 217 Conn. 330, 335, 586 A.2d 562 (1991); *Mizla* v. *Depalo*, 183 Conn. 59, 63 n.8, 438 A.2d 820 (1981). Accordingly, our review of the ruling of the trial court in this case is plenary." *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53–54, 607 A.2d 424 (1992). Because we conclude that the inferences the trial court drew from the stipulation of facts are legally and logically incorrect, we reverse.

We begin our discussion with the interrelationship among § 12-217 (a) (A), which permits a taxpayer to take a deduction that is allowable under the federal corporation income tax laws; *D.A. Pincus & Co.* v. *Meehan*, 235 Conn. 865, 871–72, 670 A.2d 1278 (1996); § 12-217 (a) (D) (1), which provides that a taxpayer may not, however, deduct "expenses related to dividends" from gross income; *Bolt Technology Corp.* v. *Commissioner of Revenue Services*, 213 Conn. 220, 226–30, 567 A.2d 371 (1989); and § 12-226a, which permits the commissioner to adjust income where it has been improperly or inaccurately reflected. Section 12-226a grants the commissioner broad discretion to adjust computations of income whenever he finds that the taxpayer's determination of income is improper or inaccurate. We agree with the commissioner that such impropriety or inaccuracy need not be an intentional misrepresentation of income, but can instead be a mere inaccuracy of income as compared to what the commissioner deems in his discretion to be a proper reflection of the taxpayer's income.

Section 12-226a is virtually identical to the adjustment provision in New York Tax Law § 211 (5) (McKinney 1986).[11] "The fact that a statute is almost a literal copy

---

[11] New York Tax Law § 211 (5) (McKinney 1986) provides in relevant part: "In case it shall appear to the tax commission that any agreement, understanding or arrangement exists between the taxpayer and any other corporation or any person or firm, whereby the activity, business, income or capital of the taxpayer within the state is improperly or inaccurately reflected, the tax commission is authorized and empowered, in its discretion

of a statute of a sister state is persuasive evidence of a practical reenactment of the statute of the sister state; as such it is proper to resort to the decisions of a sister court construing that statutory language." *State v. Elliott,* 177 Conn. 1, 5, 411 A.2d 3 (1979). The New York Court of Appeals has interpreted § 211 (5) to give the tax commission wide discretion to determine whether income has been improperly or inaccurately reflected and will uphold the commission's decision if it has a rational basis. See, e.g., *Campbell Sales Co.* v. *New York State Tax Commission,* 68 N.Y.2d 617, 619–20, 496 N.E.2d 213, 505 N.Y.S.2d 54 (1986), cert. denied, 479 U.S. 1088, 107 S. Ct. 1295, 94 L. Ed. 2d 151 (1987) (commission's decision upheld unless it is abuse of discretion). We also note that the federal tax laws contain a provision, 26 U.S.C. § 482 (1994),[12] that has the same spirit as § 12-226a, yet is more restrictive in that its language is less discretionary. Nevertheless, it has been interpreted to grant to the United States Secretary of the Treasury broad discretion to allocate income and deductions between related corporations for the purpose of preventing evasion of taxes or to reflect

and in such manner as it may determine, to adjust items of income, deductions and capital, and to eliminate assets in computing any allocation percentage provided only that any income directly traceable thereto be also excluded from entire net income, so as equitably to determine the tax. . . ."

[12] Title 26 of the United States Code, § 482 (1994), provides: "Allocation of income and deductions among taxpayers

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. In the case of any transfer (or license) of intangible property (within the meaning of section 936 [h] [3] [B]), the income with respect to such transfer or license shall be commensurate with the income attributable to the intangible."

income clearly. See *W. Braun Co.* v. *Commissioner of Internal Revenue,* 396 F.2d 264, 266–68 (2d Cir. 1968) (concluding that secretary arbitrarily invoked § 482 to allocate income between related corporations where no evidence of lack of business purpose to corporate structure).

In the present case, in order to conclude that income has been improperly or inaccurately reflected pursuant to § 12-226a, the commissioner implicitly found that the plaintiff had failed to comply properly with § 12-217 (a) (D) (1) in that it had deducted expenses related to dividends. In this case, because the commissioner's invocation of § 12-226a relies on § 12-217 (a) (D) (1), which allows the taxpayer a deduction, the taxpayer—the plaintiff—has the burden to prove that it properly took the deduction. See *Kelly-Springfield Tire Co.* v. *Bajorski,* 228 Conn. 137, 141–42, 635 A.2d 771 (1993) ("ambiguities in the language or the applicability of statutes governing tax liability are resolved in favor of taxpayers if the issue is the authority to impose a tax, and in favor of the tax commissioner if the issue is the right to a deduction or exemption"); see also *Altray Co.* v. *Groppo,* 224 Conn. 426, 432, 619 A.2d 443 (1993); *B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8–9, 490 A.2d 991 (1985). We conclude that because the plaintiff has sustained its burden, the trial court improperly upheld the commissioner's decision to disallow the deductions taken by the plaintiff.

The trial court first concluded that the commissioner properly had disallowed the deductions because the plaintiff had failed to comply with § 12-217 (a) (D) (1). The court based its conclusion upon paragraph fourteen of the parties' stipulation, which provides that "[t]he FSC declared and paid dividends to Smiths in an amount equal to the entire FSC [c]ommission [e]xpense and said FSC commissions were the sole source of the funds for such dividends." From that stipulation, the court

inferred that Smiths International had no source of income other than the commissions it had received from the plaintiff. The court then inferred that, if Smiths International had no other income, it must have had no expenses. The court therefore concluded that Smiths International must have been a mere paper corporation, without economic substance.

The trial court relied on this court's definition of "expenses related to dividends" in *Bolt Technology Corp.* v. *Commissioner of Revenue Services*, supra, 213 Conn. 228, in which we stated that commission expenses are "expenses related to dividends" when "they are directly responsible for generating the dividends paid by the [domestic international sales corporations] to their parent companies" to conclude that the plaintiff had failed to comply with § 12-217 (a) (D) (1). Using that definition, the trial court determined in the present case that "[the plaintiff] is directly responsible for generating the dividends paid by [Smiths International] to Smiths because [Smiths International's] sole income, according to the stipulation of the parties, is from the commissions paid to [it] by . . . [the plaintiff] . . . ." The trial court concluded, therefore, that because Smiths International was a paper corporation created solely to divert funds from the plaintiff to Smiths in order to enable the plaintiff to take advantage of the deduction otherwise permitted under § 12-217 (a) (A), the plaintiff had violated § 12-217 (a) (D) (1) and the commissioner properly had disallowed the deductions.

The plaintiff argues that the trial court's inferences are not logically and legally supportable because the court misinterpreted the parties' stipulation and ignored the law. We agree with the plaintiff.

The parties stipulated in paragraph fourteen that Smiths International had "declared and paid dividends

to Smiths in an amount equal to the entire . . . [c]ommission [e]xpense and [that those] commissions were the sole source of the funds for such dividends." The trial court's inference from that stipulation that Smiths International had no expenses, that its sole income was the commissions it received from the plaintiff, and that therefore it was a paper corporation, is legally and logically incorrect for several reasons. It was stipulated that Smiths International was a valid FSC, which meant as a matter of law that it could not have been a mere paper corporation without economic substance because of federal requirements to engage in certain activities that gave it economic substance. See 26 U.S.C. §§ 921 through 927 (1994). For example, it was required to maintain a place of business, maintain books and accounting records and employ a staff—activities which by necessity generated expenses.[13] In addition, as a FSC, Smiths International was required to pay federal income tax on the nonexempt portion of its income and to pay income or franchise taxes to the United States Virgin Islands, the territory in which it is incorporated. Furthermore, according to 26 U.S.C. § 926 (a) (1994), the source of funds for dividends paid to the shareholder of a FSC must be any earnings and profits attributable to foreign trade income.[14] Therefore, the commissions received by Smiths International *had* to be the primary source of funds for the dividends it paid to Smiths. Although, in paying the dividends in accordance with federal requirements, Smiths International exhausted the entire commission, there is no

---

[13] See footnote 1.

[14] Title 26 of the United States Code, § 926 (a) (1994), provides: "Distributions made first out of foreign trade income

"For purposes of this title, any distribution to a shareholder of a FSC by such FSC which is made out of earnings and profits shall be treated as made—

"(1) first, out of earnings and profits attributable to foreign trade income, to the extent thereof, and

"(2) then, out of any other earnings and profits."

indication in the record that Smiths International did not have income from other sources. In fact, because Smiths International served as the sales representative for another subsidiary of Smiths, it received income, in the form of commissions, from that company.[15] Furthermore, 26 U.S.C. § 921 (d) (1994)[16] provides that a FSC can have investment income in the form of interest, dividends, royalties, annuities and rents. See Treas. Reg. § 1.921-2 (f) (1995).[17] Therefore, the inferences that the sole source of income generated by Smiths International was the commissions it received from the plaintiff and that its only expenses were the dividends it paid Smiths were not legally and logically correct.

The trial court also concluded that the commissioner was correct in invoking his discretion under § 12-226a to adjust the plaintiff's income by ignoring the separate

---

[15] See footnote 3.

[16] Title 26 of the United States Code, § 921 (d) (1994), provides: "Foreign trade income, investment income, and carrying charges treated as effectively connected with United States business

"For purposes of this chapter—

"(1) all foreign trade income of a FSC other than—

"(A) exempt foreign trade income, and

"(B) section 923 (a) (2) non-exempt income,

"(2) all interest, dividends, royalties, and other investment income received or accrued by a FSC, and

"(3) all carrying charges received or accrued by a FSC,

"shall be treated as income effectively connected with a trade or business conducted through a permanent establishment of such corporation within the United States. Income described in paragraph (1) shall be treated as derived from sources within the United States."

[17] Treasury Regulation § 1.921-2 (f) (1995) provides in relevant part: "(i) Investment income means:

"(A) Dividends,

"(B) Interest,

"(C) Royalties,

"(D) Annuities,

"(E) Rents . . .

"(F) Gains from the sale of stock or securities,

"(G) Gains from future transactions in any commodity on, or subject to the rules of, a board of trade or commodity exchange . . . ."

existence of Smiths International in order to "consider the payment of the commission[s] as if [they] were made directly by [the plaintiff] to Smiths." In relying on its earlier interpretation of paragraph fourteen of the stipulation, the trial court stated that because the arrangement between the plaintiff, Smiths International and Smiths did not have economic substance and because these parties were not dealing at arm's length, the arrangement was "a sham." Therefore, the court concluded that the commissioner had properly adjusted the plaintiff's income in order to prevent "decreas[ing] the amount of tax paid by [the plaintiff] to the State of Connecticut in favor of passing on ultimately to Smiths that portion of the tax free dividend that would have been paid to Connecticut." Because the trial court relied on its earlier improper interpretation of paragraph fourteen and the inferences it drew therefrom, we disagree.

Moreover, to the extent that the trial court afforded special deference to the commissioner's decision to invoke § 12-226a to disallow the deductions, we conclude that the commissioner's decision does not warrant such deference. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Citations omitted; internal quotation marks omitted.) *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 678, 628 A.2d 957 (1993). Where, however, a question of law is involved, we "[invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny, as in this case, the agency

is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) Id., 678–79. Because the commissioner's determination of whether the commission expenses in question were related to dividends raised a question of law and because we have not, until today, decided when the commissioner may properly invoke § 12-226a, we do not grant the commissioner special deference in his use of § 12-226a in this case.

Regulations that were adopted by the department of revenue services while this case was pending further support our conclusion that the trial court was incorrect in concluding that the commissioner properly had invoked his discretion under § 12-226a.[18] Section 12-

[18] The plaintiff argued in its brief that Internal Procedure (IN) 94 (1) published by the commissioner during the pendency of this appeal similarly supports our conclusion that the commissioner arbitrarily invoked his discretion. Connecticut Dept. of Revenue Services, Internal Procedure (IN) 94 (1), Audit Guidelines for Proposing to Invoke the Commissioner's Discretion Under General Statutes §§ 12-221a and 12-226a. This guideline, with language similar to § 12-226-1 (c) of the Regulations of Connecticut State Agencies, purports to offer guidance to the commissioner on the proper use of § 12-226a. It provides that the commissioner may invoke § 12-226a to restructure an arrangement between parties that was "principally motivated for tax avoidance and has little or no business purpose." Id., Internal Procedure (IN) 94 (1) (V) (B) (1). The guideline further provides that "[i]n determining whether the parties were motivated for business purposes or whether the businesses had economic substance, among the factors the [c]ommissioner will consider are: a. whether the related party had an identifiable place of business with supporting business records; b. whether the related party maintains books and related accounting records; c. whether the related party had a staff of employees or engaged contractors adequate in number and with sufficient expertise to conduct its business affairs; d. whether the taxpayer so controls and dominates the finances, policy and business activities of the related party that the related party has virtually no separate existence; e. whether the form employed for doing business is a sham; and f. whether the separate businesses had economic substance because a reasonable possibility of obtaining a profit existed, apart from achieving tax benefits." Id., Internal Procedure (IN) 94 (1) (V) (B) (2). Additionally, the guideline notes that "a [f]oreign [s]ales [c]orporation that meets the requirements of §§ 921–927 of the Internal Revenue Code will not be considered an arrangement principally motivated for tax avoidance purposes." Id.

The plaintiff argues that the commissioner improperly failed to apply these guidelines to the arrangement in this case. Furthermore, the plaintiff

226a-1 (c) (1) of the Regulations of Connecticut State Agencies provides that "[§] 12-226a of the general statutes authorizes the [c]ommissioner to disregard an arrangement under which related companies may operate where one company so dominates and controls the other that income of the companies is improperly or inaccurately reflected, and it is neither realistic nor feasible to reconstruct the transactions between them using the arm's-length consideration standard." This regulation further provides that "[i]n determining whether an arrangement under which related companies may operate results in the improper or inaccurate reflection of the activity, business, income or capital of the companies, the [c]ommissioner shall consider whether (A) the companies are motivated by business purposes other than tax avoidance or are principally motivated by tax avoidance purposes . . . ." Regs., Conn. State Agencies § 12-226a-1 (c) (2). "In determining whether related companies are motivated by business purposes other than tax avoidance or are principally motivated by tax avoidance purposes and whether the separate businesses of the companies have economic substance, the [c]ommissioner shall consider whether (A) the related person has an identifiable place of business with supporting business records; (B) the related person maintains books and related accounting records; (C) the related person has a staff of employees or engaged contractors adequate in number and with

---

argues that had the commissioner applied them, he would have concluded that the arrangement between the plaintiff, Smiths International and Smiths had economic substance and operated at arm's length, and that each company had a separate existence with economic reality.

In response, the commissioner argues, inter alia, that because "[t]he guidelines only amount to a self-imposed limitation on the exercise of his discretion," they do not have the force and effect of law and he, therefore, need not rely on them.

Because our resolution of this dispute would have no effect on the outcome of this appeal, we need not determine the significance, weight or applicability of these guidelines.

sufficient expertise to conduct its business affairs; (D) the company so controls and dominates the finances, policy and business activities of the related person that the related person has virtually no separate existence; (E) the form employed for doing business is a sham; and (F) the separate businesses have economic substance because a reasonable possibility of obtaining a profit exists, apart from achieving tax benefits. No one factor is controlling in determining whether the company and the related person are motivated by business purposes and whether the arrangements have economic substance. An arrangement between a foreign sales corporation, as defined in 26 U.S.C. § 922 and meeting the requirements of 26 U.S.C. §§ 921 to 927, and its shareholders shall not be considered an arrangement that is principally motivated by tax avoidance purposes." Regs., Conn. State Agencies § 12-226a-1 (c) (3).

The commissioner argues that this regulation supports his conclusion that Smiths International is a mere paper corporation because it fails to meet the factors enumerated in the regulation for a company with economic substance and its existence, therefore, is principally motivated for tax avoidance purposes. We disagree. In this case, because the parties stipulated that Smiths International is a valid FSC in satisfaction of 26 U.S.C. §§ 921 through 927, it necessarily has an identifiable place of business in the United States Virgin Islands, maintains business records, has employees or contractors, and has other sources of income by which it can make a profit. Therefore, because Smiths International satisfied the factors listed in the regulation and because Smiths International was a FSC that comported with all the federal requirements, we conclude that the relationship between the plaintiff, Smiths International and Smiths was not motivated by tax avoidance purposes, that each of these companies had economic sub-

stance and that they dealt with each other at arm's length.

The commissioner additionally relies, as did the trial court, on *Bolt Technology Corp.* v. *Commissioner of Revenue Services*, supra, 213 Conn. 220, to support its position that it properly disallowed the deductions taken by the plaintiff. This reliance is misplaced. In *Bolt Technology Corp.*, the plaintiff (Bolt) was the parent corporation of Bolt International Corporation, which was organized as a domestic international sales corporation (DISC) whose primary function was to handle the sales and leasing activities of its parent company. Id., 222–23. Bolt compensated the DISC on a commission basis, those commissions being the DISC's sole source of income. Bolt, in turn, received dividends from the DISC. Id., 224. On its Connecticut corporation business tax returns, Bolt deducted the commission expenses paid to the DISC. Id. The commissioner disallowed the deduction because it was an "expense related to dividends" and, therefore, was not deductible under § 12-217 (a) (D) (1). Id., 225. We affirmed the commissioner's decision.

The commissioner argues in this case that Smiths International is similar to the DISC in *Bolt Technology Corp.* because the commissions received from the plaintiff here were also Smiths International's sole source of income and that, therefore, they are related to the dividends paid to Smiths because "[i]f [the plaintiff] had been a shareholder in [Smiths International] or had established its own FSC, it would have received these dividends rather than Smiths." We are not persuaded.

The fundamental differences between DISCs and FSCs, reflected in the history of their creation, cause *Bolt Technology Corp.* to be unpersuasive. Congress created the DISC in 1971 as a means of encouraging exports. The statutory provisions establishing the DISC

permitted the parent corporation to defer one half of its income to a DISC by using safe-harbor pricing rules and permitted it to be a mere paper corporation. See 26 U.S.C. §§ 991 through 997 (1994); *Dresser Industries, Inc.* v. *Commissioner of Internal Revenue,* 911 F.2d 1128, 1131 (5th Cir. 1990); *Thomas International Ltd.* v. *United States,* 773 F.2d 300, 301 (Fed. Cir. 1985), cert. denied, 475 U.S. 1045, 106 S. Ct. 1261, 89 L. Ed. 2d 571 (1986). Furthermore, DISCs were not subject to federal income taxation. See 26 U.S.C. § 991 (1994); *Bolt Technology Corp.* v. *Commissioner of Revenue Services,* supra, 213 Conn. 223. In response to their creation, the European Economic Community claimed that DISCs constituted an illegal export subsidy in violation of the United States' trade obligations adopted in the General Agreement on Tariffs and Trade because they lacked economic substance and the pricing rules used for DISC transactions bore no relation to arm's length prices. To resolve this controversy and, at the same time, maintain an export incentive, Congress replaced DISCs with FSCs, which comply with the United States' General Agreement on Tariffs and Trade obligations in that they have economic substance and operate at arm's length. Therefore, because FSCs in general, and the one in this case in particular, have economic substance, which DISCs lacked, the commissioner improperly relied on *Bolt Technology Corp.* to conclude that the commissions received from the plaintiff in this case were Smiths International's sole source of income. In fact, the commissioner could only have reached that conclusion by misinterpreting paragraph fourteen of the stipulation. As we stated earlier, however, the parties have stipulated that Smiths International is a valid FSC, properly created under federal law, and therefore necessarily had expenses and other potential sources of income. Furthermore, unlike the plaintiff in *Bolt Technology Corp.,* which actually

received dividends from its DISC, the plaintiff in this case did not establish its own FSC and, consequently, did not receive dividends from Smiths International. Those dividends were paid directly to Smiths, the parent corporation of Smiths International.

The commissioner's determination that this three party arrangement can be ignored and that the transactions among them are, in essence, simply between the plaintiff and Smiths is unreasonable. The arrangement, which has economic purpose and reflects an arm's length relationship, does not warrant an adjustment under § 12-226a. We agree with the plaintiff that "[t]he [commissioner] arbitrarily invoked his discretion under [§ 12-226a] to impute dividends received by Smiths to [the plaintiff] so that he could then disallow [the plaintiff's] commission expenses as 'expenses related to dividends' under [§ 12-217 (a) (D) (1)]." The trial court's conclusions, therefore, that the plaintiff failed to comply with § 12-217 (a) (D) (1) and that the commissioner did not abuse his discretion under § 12-226a in determining that the plaintiff had improperly reflected its income, are both legally and logically incorrect.

The judgment of the trial court is reversed and the case is remanded with direction to sustain the appeal.

In this opinion the other justices concurred.