CARPENTER TECHNOLOGY CORPORATION *v.*
COMMISSIONER OF REVENUE SERVICES[1]

| Superior Court | Judicial District of New Britain | File No. CV980492498S |

[1] Affirmed. *Carpenter Technology Corp.* v. *Commissioner of Revenue Services*, 256 Conn. 455, 772 A.2d 593 (2001).

Memorandum filed August 9, 2000

*Dechert Price & Rhoads* and *Richard C. Kariss*, pro hac vice, for the plaintiff.

*Richard K. Greenberg*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. For the tax years ending June 30, 1990, and June 30, 1991, the defendant, the commissioner of revenue services (commissioner), disallowed an interest deduction on loans made from a wholly owned subsidiary, Carpenter Investments, Inc. (Investments), to the plaintiff, Carpenter Technology Corporation (Carpenter), on the basis that Investments was a sham and the transactions at issue between Carpenter and Investments had no economic substance. Carpenter appeals pursuant to General Statutes § 12-237 the commissioner's deficiency assessment of corporation business tax imposed on Carpenter as a result of the disallowance of the interest deduction. The two related issues in this tax appeal are: first, whether the commissioner properly disallowed the interest deduction because there was no economic substance to the loans from Investments to Carpenter; and, second, whether the commissioner

properly exercised his discretion under General Statutes § 12-226a by viewing Investments' income and expenses as those of Carpenter and treating the two corporations as a single entity for tax purposes, essentially nullifying the interest expense deduction.

The following facts were either stipulated to by the parties or found by the court. Carpenter is a Delaware corporation primarily engaged in the business of manufacturing and distributing specialty steel and titanium products. Business was slow in the 1980s and Carpenter felt the need to develop new products and expand globally. Carpenter decided to target three areas for development: Mexico, Europe and the Pacific rim countries. The products that Carpenter sought to manufacture and sell overseas were components that would be used in products considered high product liability risks such as surgical equipment, surgical implants (such as hip joint prostheses, bone plates and heart catheter wire), laser systems, petrochemical storage and processing equipment, landing gear for carrier based jet aircraft, automobile air bags, automobile anti-lock brakes, automobile fuel injection systems, aircraft engines and nuclear reactors.

During the 1980s and 1990s, Carpenter expanded its business into foreign countries through the formation and acquisition of subsidiary corporations and joint ventures organized under the laws of the foreign countries. Carpenter's management was concerned about putting all of the company's assets at risk when selling its products in the foreign market. These concerns included no limitations on damage awards in some countries, and potential personal liability of individual shareholders and corporate officers in third world countries. In general, Carpenter needed a liability shield to protect the parent corporation. With this in mind, Carpenter's management incorporated Investments in Delaware as a domestic, wholly owned subsidiary.

Investments had twelve employees, with its office and assets located in Delaware. Investments' board of directors and officers met and did business in Delaware. Investments paid rent for its office space, paid Delaware tax, filed its federal tax return and paid federal income taxes. Following its incorporation, Investments set up foreign subsidiary corporations in the foreign countries. It was the belief of the management of Carpenter that Investments would effectively be a shield for Carpenter's domestic business assets from liabilities related to conducting business in foreign countries.

Investments was incorporated by Carpenter in 1989 with a capitalization of $300,005,000 contributed by Carpenter in five payments over a four month period. Within days of Investments' receipt of each of the capitalization payments, Investments loaned a total of $300,000,000 back to Carpenter. The loan from Investments to Carpenter was structured as a commercial loan in which Carpenter was required to make periodic interest payments to Investments based upon an interest rate of 2 percent over the prime rate for corporate loans from large United States commercial banks as quoted in the Wall Street Journal on the second Friday of July of each year. Carpenter was not required to make any principal payments during the tax years of 1990 and 1991; however, Carpenter did make timely interest payments to Investments pursuant to the terms of the note for the 1990 and 1991 tax years.

Investments did not conduct any business in Connecticut, nor did it own or lease any tangible personal property in Connecticut, during the tax years in question. Carpenter and its subsidiaries, including Investments, filed federal consolidated income tax returns for the 1990 and 1991 tax years. Carpenter deducted the interest expense resulting from the loan from Investments on Carpenter's federal and state tax returns. No adjustment

was made by the Internal Revenue Service to the interest deductions taken by Carpenter on the Investments loan.

The commissioner conducted an audit of Carpenter's tax returns for the 1990 and 1991 tax years. On April 1, 1995, the commissioner issued a notice of assessment of tax for $214,679 against Carpenter for the 1990 and 1991 tax years. The commissioner disallowed the interest payment deductions from Carpenter to Investments so that Investments' federal taxable income was added to Carpenter's Connecticut net income for the 1990 and 1991 tax years. This disallowance resulted in an increase in Carpenter's tax of $196,102 for the two years in issue ($89,124 for 1990 and $106,978 for 1991).

The commissioner's position is that Investments was formed solely for the purpose of allowing Carpenter to take an interest deduction on its own money. The commissioner views the passage of $300,005,000 to Investments by Carpenter and the immediate return to Carpenter of $300,000,000 structured as a loan, to be nothing less than a sham. The commissioner argues that Carpenter did not need to create Investments as a shield from liability claims from the sales in foreign countries to foreign customers because Carpenter could have protected itself with insurance. Whether Carpenter could have been protected adequately by insurance is a business decision that the court will not judge. There is no evidence to support the commissioner's claim that insurance would be an adequate protection for Carpenter.[2]

The commissioner claims that the loans and subsequent payment of interest by Carpenter to Investments

[2] The court takes judicial notice of the Bhopal incident that greatly put at risk the American company that had a subsidiary corporation operating a chemical plant in India that exploded, causing catastrophic damages to persons and property. The incident also caused the president of the parent corporation to be charged criminally in the foreign country.

were transactions lacking economic substance. The commissioner does not see Investments as a separate and viable corporation, but rather, sees Carpenter and Investments as one and the same. The commissioner sees no economic sense in having Carpenter give $300,005,000 to Investments and immediately taking the money back in the form of a loan. What the commissioner fails to see is that Carpenter paid Investments interest payments on $300,000,000 at commercially acceptable rates in 1990 and in 1991.

From the facts that have been stipulated to and from the facts that the court has found, Investments was formed for a legitimate business purpose. Investments was properly organized with employees, officers and a board of directors. It paid salaries, taxes, rent and other corporate expenses. Investments was no sham. The court notes that the business interest deduction taken on the federal tax returns by Carpenter was not contested by the Internal Revenue Service. The court finds that the commissioner erred in disallowing the interest deduction on the ground that the loans had no economic substance.

The commissioner argues that he has the power under § 12-226a to disallow the interest deduction taken by Carpenter because Carpenter's income was inaccurately reflected due to the arrangement between Carpenter and Investments. Section 12-226a provides discretion to the commissioner to "adjust items of income, deductions and capital, and to eliminate assets in computing any apportionment percentage under this chapter" if his conclusion is based upon a finding that "any agreement, understanding or arrangement exists between the taxpayer and any other corporation or any person or firm, whereby the activity, business, income or capital of the taxpayer within the state is improperly or inaccurately reflected . . . ." In the present case, the commissioner claims that the loans from Investments to

Carpenter were an arrangement that caused Carpenter's income to be inaccurately reflected since the "transactions were not loans to be respected for tax purposes as they lack economic substance," and they "were nothing more than circular transactions, all within the Carpenter corporate structure." As stated previously, the court finds nothing improper or inaccurately reflected with the loans. Loans are "identified by the mutual understanding between the borrower and lender of the obligation to repay and a bona fide intent on the borrower's part to repay the acquired funds." *Collins* v. *C.I.R.*, 3 F.3d 625, 631 (2d Cir. 1993). Certainly, Carpenter had the assets to repay the $300,000,000 loan from Investments, and there is no evidence that Carpenter intended to avoid the repayment of the loan.

Although the commissioner argues that *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 671 A.2d 813 (1996), is inapplicable to the present case because it deals only with a foreign sales corporation, the court disagrees. The issue in *SLI International Corp.* was whether the foreign sales corporation was a viable corporation with economic substance rather than a sham. Our Supreme Court held that, under the stipulated facts of that case, the foreign sales corporation was not a mere paper corporation because it was formed according to federal requirements, which obligated the corporation to maintain a place of business, employ a staff, maintain books and perform other corporate functions which generate necessary expenses. Id., 168. The situation of Investments is much stronger than that of the foreign sales corporation in *SLI International Corp.* Investments, as said earlier, had all the corporate trappings. It had income from the interest earned on the loan to Carpenter. Investments was the holding company for numerous foreign subsidiary corporations. It had employees and management. Clearly, Investments was not a sham, but rather, a viable functioning

corporation. It is no secret that Carpenter controlled Investments as its wholly owned subsidiary. By contributing the $300,005,000 of capital to Investments as an asset of the corporation, however, the $300,005,000 became subject to the claims of creditors of Investments. In this sense, the $300,005,000 capitalization fulfilled the objective of Carpenter to form a domestic corporation which had economic substance and could withstand claims of creditors of Investments.

The commissioner relies on *Trans-Lux Corp.* v. *Meehan*, 43 Conn. Sup. 314, 331, 652 A.2d 539 (1993), in which Judge Blue construed the meaning of § 12-226a, concluding that "[a]ll that is necessary to invoke those powers [in § 12-226a] is a corporate arrangement that results in an improper or inaccurate reflection of income. And, given the statutory use of the disjunctive, an inaccurate reflection, without any trace of impropriety, is sufficient." The court disagrees with the commissioner that he has unfettered discretionary powers under § 12-226a. When the issue is a question of law, no deference is given to the commissioner's actions. *SLI International Corp.* v. *Crystal,* supra, 236 Conn. 170–71. The question of law in the present case is whether the relationship between Carpenter and Investments, and the transactions between them, were legitimate business arrangements. The court finds that this "arrangement, which has economic purpose and reflects an arm's length relationship, does not warrant an adjustment under § 12-226a" as a matter of law. Id., 176.

In conclusion, the court finds that the loans from Investments to Carpenter had economic substance and a business purpose. The court further finds that the commissioner's exercise of his discretion under § 12-226a to make the adjustment at issue in the present case was unreasonable in that the corporate arrangement between Carpenter and Investments did not result in

an improper or inaccurate reflection of income. Accordingly, the court sustains the plaintiff's appeal. Judgment may enter in favor of the plaintiff without costs. The commissioner is ordered to refund to the plaintiff any tax and interest it may have already paid[3] as a result of the deficiency assessment based on the disallowance of the interest deduction, with interest pursuant to § 12-237.

---

[3] The plaintiff does not indicate in its complaint or briefs whether it has paid the tax or interest at issue in the present case.