## CITY OF STAMFORD *v.* ZDRAVKO KOVAC
## (11526)

HEIMAN, SCHALLER and FREEDMAN, Js.

Argued September 13—decision released December 6, 1994

*Sigmund L. Miller,* for the appellant (defendant).

*James V. Minor,* assistant corporation counsel, with whom was *Daniel M. McCabe,* corporation counsel, for the appellee (plaintiff).

FREEDMAN, J. This matter is before us on remand from the Supreme Court. Previously, in *Stamford* v. *Kovac,* 31 Conn. App. 599, 626 A.2d 792 (1993), we concluded that the trial court had improperly accepted the report of the attorney trial referee and had rendered judgment against the defendant without allowing oral argument on the defendant's exceptions and objections to the initial and supplemental reports of the referee. The Supreme Court granted certification, reversed our judgment and remanded the case to this court for consideration of the remaining issues raised by the defendant. *Stamford* v. *Kovac,* 229 Conn. 627, 642 A.2d 1190 (1994).

This is an action brought by the plaintiff seeking to enjoin claimed violations of the Inland Wetlands and Watercourses Act, General Statutes §§ 22a-36 through 22a-45, as well as local regulations that implement that act. The plaintiff claimed that the defendant had illegally dumped fill and debris in regulated areas without a permit. After a trial before an attorney trial referee, the referee found in favor of the plaintiff and recommended injunctive relief and an award of attorney's fees and costs. The trial court accepted the report

of the attorney trial referee and rendered judgment thereon, and the defendant appeals.

On appeal, the defendant claims that the trial court incorrectly (1) found a violation of the inland wetlands statute, (2) sustained the attorney trial referee's preclusion of testimony by certain expert witnesses, and (3) awarded costs, fees and expenses that included the overhead costs of the municipal enforcement agency and attorney's fees for services performed by salaried city attorneys.

The attorney trial referee made the following findings of fact. The defendant owns property located at the southwest corner of Northwood Lane and Long Ridge Road in Stamford, which includes a well defined watercourse and extensive wetlands area. On August 28, 1985, the defendant filed an application with the Stamford environmental protection board (EPB) for a permit to construct a dwelling on his property. As part of the application, the defendant submitted certain plans prepared by a surveyor, Fiorenzo Corbo, and a soil scientist, Thomas W. Pietras, of Soil Science Services. According to these plans, the wetlands were delineated by a yellow north to south line (the Pietras line) and all property to the west of the yellow line constituted wetlands. These plans were presented to the plaintiff by the defendant and were represented by the defendant to be a correct delineation of the wetlands. In reliance on these plans, the plaintiff approved the defendant's application with several conditions.[1]

The attorney trial referee further found that on several occasions prior to February 2, 1987, the defendant, "without legal authority," performed grading and filling operations on said wetlands and was instructed

[1] Although there is no specific finding by the attorney trial referee as to the date the application was approved, the record reveals that it was approved in October, 1985.

by the plaintiff to cease such operations. The defendant then submitted to the plaintiff a proposed revised plan that showed the eastern edge of the wetlands in the same location as the north to south yellow line shown on the plans prepared by Corbo and Pietras, and indicated all of the wetlands as a crosshatched area on the plan. The revised plan showed that all proposed construction was to be confined to uplands at a distance greater than twenty-five feet from the wetlands. On the basis of the revised plan, and in reliance on the twenty-five foot buffer shown thereon, the plaintiff determined that no EPB permit was required.

The attorney trial referee found that prior to October 20, 1987, the defendant permitted up to 500 cubic yards of fill to be deposited in the wetlands and in the established twenty-five foot buffer area, in violation of the plaintiff's wetlands regulations and in violation of the terms of the application submitted by the defendant. This condition was discovered in an October 20, 1987 staff inspection by the plaintiff. On October 23, 1987, the plaintiff issued a cease and desist order to the defendant and, on October 29, 1987, a show cause hearing was conducted before the EPB. The EPB ordered that the cease and desist order continue in effect as modified to require the defendant to perform certain specified corrective action. On November 16, 1987, a staff inspection by the EPB revealed that, with the permission of the defendant, County Excavating and Blakeslee Arpaia and Chapman were dumping and grading materials on the wetlands and buffer area adjacent to the wetlands.

Prior to December 2, 1987, the defendant removed or caused to be removed some but not all of the fill from the wetlands area. On December 17, 1987, the plaintiff received from the defendant a revised report prepared by J. L. Jarvis of Soil Science Services showing a new wetlands line (the Jarvis line) located to the west

of the original wetlands line. The wetlands line on this report reduced the amount of wetlands to the defendant's benefit.

The attorney trial referee found that the Jarvis line was not accurate and did not reflect a natural wetlands line. Rather, it reflected conditions after the performance of unauthorized and unlawful dumping, filling and grading in the wetlands by the defendant and, thus, did not reflect the original, natural wetlands. The attorney trial referee found that the natural wetlands line was the Pietras line. On the basis of these facts, the referee recommended that an injunction issue against the defendant. The trial court accepted the report of the attorney trial referee and rendered judgment thereon.

## I

The defendant first asserts that the trial court incorrectly found that he violated the Inland Wetlands Act. The defendant claims that due to a discrepancy between the dates of the finished survey and Corbo's field notes, the Corbo survey was incorrect.[2] Therefore, the defendant argues, the Corbo survey should not have been the basis for determining that the Inland Wetlands Act had been violated. The plaintiff argues, however, that the court properly determined that the yellow line on the Corbo survey correctly depicted the wetlands. We agree with the plaintiff.

"In addressing a challenge to the facts found by the trial referee and adopted by the trial court, this court's function is to determine whether those findings were clearly erroneous. Practice Book § 4061. Because the

[2] Specifically, the defendant challenges the attorney trial referee's conclusion that the yellow line on the Corbo survey correctly depicted the wetlands because the yellow line was put on the survey on June 19, 1985, whereas Corbo's notes, which were the basis for the yellow line, were dated June 29, 1985.

resolution of conflicting factual claims falls within the province of the trial court, we can reverse the judgment only if the findings are clearly erroneous. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 473, 542 A.2d 692 (1988). We cannot retry the facts or pass on the credibility of the witnesses. Id." *Plikus* v. *Plikus,* 26 Conn. App. 174, 177, 599 A.2d 392 (1991).

The record in the present case supports the attorney trial referee's finding that the Corbo survey rather than the Jarvis survey accurately showed the wetlands on the defendant's property. At trial, soil scientist Kenneth Stevens testified that both the Pietras and the Jarvis lines were correct but that "the wetland line prepared by Jamie Jarvis was prepared because of fill on top of wetlands."[3] We conclude, on the basis of this testimony, that the attorney trial referee's finding that the wetlands line on the Corbo survey correctly depicted the wetlands was not clearly erroneous.

The defendant also asserts that the trial court improperly applied a twenty-five foot buffer to the wetlands when the regulation providing for such a buffer was first adopted by the EPB on June 5, 1989, almost two years after the claimed violation. The plaintiff posits that the defendant had acquiesced in the requirement of the twenty-five foot buffer as a condition of approval.

---

[3] Stevens testified as follows:

"Q. Let me rephrase. Today, as you sit here, is it your belief that Mr. Pietras was correct, that as of the date of his report in 1985, the wetland line shown in lot D was the correct line between wetland soils and upland soils?

"A. Yes.

"Q. And is it your opinion, as you sit here today, based upon your experience, based upon your observation of the events that you just discussed, that the wetland line prepared by Jamie Jarvis was prepared because of fill on top of the wetlands?

"A. Yes."

The trial court's memorandum of decision on the defendant's objections to the attorney trial referee's report noted that the defendant had acquiesced with regard to the twenty-five foot buffer.[4] The record adequately supports this conclusion. In October, 1985, the defendant's application was granted with conditions, one of which was that a modified plan that located the house twenty feet from the regulated wetlands be submitted prior to the issuance of a permit. Subsequently, by letter dated August 20, 1986, the defendant was informed that if all activities took place outside of the twenty-five foot buffer, no permit would be required. In February, 1987, the defendant submitted a revised house location plan showing the twenty-five foot buffer. On the basis of this evidence, we cannot say that the trial court's findings were clearly erroneous.

## II

The defendant next claims that the trial court improperly sustained the attorney trial referee's preclusion, pursuant to Practice Book § 220 (D),[5] of two expert witnesses, Dominick M. Schefiliti, a professional engineer and land surveyor, and Robert T. Hamilton, a profes-

---

[4] The memorandum of decision states the following: "The defendant next claims that no requirement for a twenty-five foot buffer existed and therefore any fill that was deposited within twenty-five feet of the wetland was done so lawfully. The simple answer to this is that the twenty-five foot buffer was made an express condition of the approval issued by the plaintiff to the defendant on August 20, 1986. The record is clear that the defendant acquiesced in this condition when he commenced work on the land in accordance with the approval issued."

[5] Practice Book § 220 (D) provides in pertinent part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. . . ."

sional land surveyor. The defendant admitted at trial that no formal disclosure of these experts had been made, but argues that they nonetheless should have been permitted to testify. The trial court found that no good cause was shown at trial that would justify allowing these experts to testify. We agree.

We recently "note[d] the emphatic tone of the final sentence of § 220 (D) which reads in relevant part that if there has not been a compliance with this section *'such expert shall not testify except in the discretion of the court for good cause shown.'* (Emphasis added.)" *Sung* v. *Butterworth,* 35 Conn. App. 154, 159, 644 A.2d 395 (1994). " 'Neither § 220 (D) nor the cases interpreting it define what constitutes "good cause." The language of the rule, however, makes clear that the trial court is to exercise broad discretion in determining whether good cause exists in a given case.' *Berry* v. *Loiseau,* [223 Conn. 786, 800, 614 A.2d 414 (1992)]. In determining whether the trial court has abused its discretion, an appellate court should entertain every reasonable presumption in favor of the trial court's decision." *Knock* v. *Knock,* 224 Conn. 776, 782–83, 621 A.2d 267 (1993).

On the basis of the record before us, we conclude that the trial court correctly sustained the attorney trial referee's preclusion of these expert witnesses. The attorney trial referee noted that had the defendant intended to call Schefiliti as an expert witness, he should have filed a motion for extension of time to disclose an expert. Because no such motion was made, and because counsel for the defendant was apprised in 1989 of the subject of Schefiliti's testimony, the attorney trial referee precluded Schefiliti from testifying.[6] Hamilton was

---

[6] The attorney trial referee noted that "the most germane issue to the case" was where the correct line was located based on the flags placed by the soil scientist. The referee then stated: "It was the issue in 1985, it was the issue in 1987, and it certainly was the issue when this case was brought

called as a witness to testify regarding a survey done on February 15, 1991, the purpose of which was to "locate the top and bottom of the existing fill lines." Hamilton was never disclosed as an expert, however, prior to March 27, 1991. Although recognizing the importance of the proposed testimony, the attorney trial referee precluded Hamilton from testifying because of noncompliance with § 220.[7] On the basis of the foregoing, the trial court correctly sustained the attorney trial referee's preclusion of testimony by both expert witnesses.

## III

The defendant's final argument is that the trial court improperly awarded EPB staff costs of $4618.65 and counsel fees of $12,406.25 to the plaintiff, pursuant to General Statutes § 22a-44 (b).[8]

in 1989. And counsel for the defendant in 1989 could well have been apprised of the fact that this was going to be the key issue. The way to go around § 220 is . . . [t]o ask the court by appropriate short calendar motion for the late filing of an expert report and the courts are generally very lenient about it. But, the very purpose of § 220 is just this: That a witness can't be hired the week of the trial without the court's permission and put forward without adequate opportunity of the other side to have their own expert, and it's trial by ambuscade."

[7] The attorney trial referee stated: "[I]t may very well be that the evidence that this witness has to give is very pertinent to the decision of the case. But a trial having begun on February 13, and the witness having done his work on February 15, and it being disclosed at this time, on March 27, is just out of line with the compliance with disclosure, and with § 220."

[8] General Statutes § 22a-44 (b) provides: "Any person who commits, takes part in, or assists in any violation of any provision of sections 22a-36 to 22a-45, inclusive, including regulations adopted by the commissioner and ordinances and regulations promulgated by municipalities or districts pursuant to the grant of authority herein contained, shall be assessed a civil penalty of not more than one thousand dollars for each offense. Each violation of said sections shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed a separate and distinct offense. The superior court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess

In *Conservation Commission* v. *Price*, 5 Conn. App. 70, 74, 496 A.2d 982 (1985), we stated that "an assessment of attorney's fees [pursuant to General Statutes § 22a-44 (b)] is discretionary with the court, by the statute's express terms." We further noted that "it is clear from the express terms of General Statutes § 22a-44 (b) that costs and fees were intended 'to restore the affected wetlands or watercourses to their condition prior to the violation, whenever possible,' *and to place the financial burden of restoration upon the violator.*" (Emphasis added.) Id., 75.

The defendant argues that the trial court incorrectly interpreted the phrase "all costs, fees and expenses" to apply to "the 'overhead' of the agency, including supplies."[9] The plaintiff counters that the court properly entered this award pursuant to General Statutes § 22a-44 (b), which provides in relevant part that "[a]ll costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action."

"If the language of a statute is clear and unambiguous, its meaning is not subject to construction. . . . When application of the statute to a particular situa-

civil penalties pursuant to this section. All costs, fees and expenses in connection with such action shall be assessed as damages against the violator together with reasonable attorney's fees which may be allowed, all of which shall be awarded to the commissioner, municipality, district or person which brought such action. The moneys collected pursuant to this section shall be used by the commissioner of environmental protection, to restore the affected wetlands or watercourses to their condition prior to the violation, wherever possible."

[9] The trial court found that "the terms 'costs and expenses' are easily broad enough to support the referee's award of actual costs incurred by the environmental protection board in paying for its personnel, employee benefits and supplies."

tion reveals a latent ambiguity in seemingly unambiguous language, however, we turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity." (Citation omitted.) *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). In the present case, we conclude that the language of § 22a-44 (b) is clear and unambiguous; thus, there is no need to review its legislative history.

The statute does not define the terms "costs," "fees" and "expenses." "Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981). Because the statute does not define these terms, they must be given their plain and ordinary meanings. Id.; see also *Bolt Technology Corp.* v. *Commissioner of Revenue Services,* 213 Conn. 220, 228, 567 A.2d 371 (1989).

The word "costs" is defined in Black's Law Dictionary (6th Ed. 1990) as "[a] pecuniary allowance, made to the successful party (and recoverable from the losing party), for his expenses in prosecuting or defending an action or a distinct proceeding within an action." The word "fee" is defined as "[a] fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done." "Expense" is defined as "[a]n outlay; charge; cost; price. The expenditure of money, time, labor, resources and thought." We conclude that the phrase "costs, fees and expenses" in § 22a-44 (b) includes all direct costs, fees and expenses incurred by the agency in connection with an action brought to restrain a continuing violation of the Inland Wetlands and Watercourses Act.

Here, the attorney trial referee's award of $4618.65 for "EPB staff costs" was accepted by the trial court.

The record reveals that this amount was calculated by taking the employees' hourly rates, adding to it the hourly cost of the benefits received by the employees, and multiplying that amount by the number of hours that the employees worked on this matter. To this amount was added a fee for copying or document preparation.[10] On the basis of the foregoing, and considering the policy of § 22a-44 (b) to "place the financial burden of restoration upon the violator"; *Conservation Commission* v. *Price,* supra, 5 Conn. App. 74; we conclude that these direct costs, fees and expenses are recoverable pursuant to § 22a-44 (b). Therefore, the defendant's claim must fail.

The defendant also claims that any award of counsel fees in this case was an abuse of discretion as the attorneys for the plaintiff were salaried city attorneys. As the trial court noted, however: "There is nothing in § 22a-44 which countenances any distinction between fees paid a salaried employee and those paid an outside attorney at a specific hourly rate."

In *Benavides* v. *Benavides,* 11 Conn. App. 150, 526 A.2d 536 (1987), we held that in family matters, the prevailing party may be awarded counsel fees even when that party is represented without fee by a nonprofit legal services organization. We noted in *Benavides* that "[a] party should not be encouraged to litigate under the assumption that no counsel fee will be awarded in favor of the indigent party represented by public legal services . . . ." Id., 154. Similarly,

---

[10] Specifically, the record indicates that the figure of $4618.65 was arrived at by adding the total cost of the salary and benefits of Richard Talamelli, environmental planner for the city of Stamford, EPB, and David Emerson, executive director of the EPB, with the cost of copying and document preparation at the EPB. According to the record, the total cost for the salary and benefits of Talamelli was $4063.04 and the total cost for the salary and benefits of Emerson was $288.61. Additionally, the amount charged for copying and document preparation was $267. The total amount was $4618.65.

here, the defendant should not be encouraged to pursue the defense of his claims under the assumption that he will not be required to pay the fees of the plaintiff's attorney.

The defendant additionally argues that because of the previous action or inaction on the part of the plaintiff's counsel, resulting in the failure to settle the case and a "horrendous trial experience," the award of attorney's fees to the plaintiff was an abuse of discretion. The trial court noted that, even if the defendant's representations are true, there was no evidence that the plaintiff's failure to settle the case was "done other than in the client's best interest." On the basis of the record before us, we cannot say that the award of counsel fees to the plaintiff was an abuse of discretion. See *Conservation Commission* v. *Price,* supra, 5 Conn. App. 74.

The judgment is affirmed.

In this opinion the other judges concurred.