WALTER R. CREPEAU ET AL. *v.* HOLMER P.
GRONAGER ET AL.
(13027)

Dupont, C. J., and Heiman and Spear, Js.

Argued December 8, 1995—officially released May 7, 1996

*Holmer P. Gronager,* pro se, the appellant-appellee (named defendant).

*Peter M. Nolin,* with whom, were *James M. Weisbard,* and on the brief, *Ann M. Siczewicz,* for the appellees-appellants (plaintiffs).

*Edward V. O'Hanlan,* for the appellee-appellant (defendant Katherine L. Gotch).

DUPONT, C. J. The defendant Holmer P. Gronager appeals from the trial court's judgment, which was based on factual findings made by an attorney trial referee. The issue raised by Gronager is whether the trial court should have based its judgment on the attorney trial referee's finding that Gronager fraudulently

conveyed property to the defendant Katherine Gotch[1] in order to hinder the plaintiffs' ability to collect a debt due them by Gronager. The plaintiffs[2] cross appealed from the trial court's refusal to render judgment against Gotch for damages.

The plaintiffs' four count complaint against the defendants alleged that Gronager's conveyance of his interest in a condominium to Gotch hindered the plaintiffs' ability to collect an arbitration award in favor of the plaintiffs against Gronager, that the defendants, on two occasions, engaged in deceptive and unfair trade practices in violation of General Statutes § 42-110a et. seq., and that the defendants fraudulently conveyed certain stock.[3]

The attorney trial referee found the following facts. From 1986 to 1989, the plaintiffs made certain investments with Gateway Securities, Inc. (Gateway), a corporation wholly owned by Gronager. Gotch worked at Gateway from 1983 until August, 1990, when Gateway ceased operations. In 1989, a National Association of Securities Dealers (NASD) arbitration proceeding was conducted involving the plaintiffs, Gateway, Gronager and David Weston, a broker at Gateway, in which the plaintiffs alleged improprieties with their account. Gotch was not a party to the arbitration proceeding. On January 30, 1990, NASD sent notice of its award in favor of the plaintiffs to Gronager, who had been aware of the award prior to this date.

On January 19, 1990, the plaintiffs' attorney contacted an employee at NASD who informed him that the plaintiffs had been awarded $227,250. The attorney requested

---

[1] The defendants are Holmer P. Gronager and Katherine Gotch. The latter is also the cross appellee in the plaintiffs' cross appeal.

[2] The plaintiffs are Walter R. Crepeau and Donna Crepeau.

[3] The appeal involves only the first count, the alleged fraudulent conveyance of a condominium.

that NASD advise Gronager of the award. On January 24, 1990, Gronager conferred with a law firm regarding the arbitration award and the possibility of moving to vacate the award. He also met with an attorney about the arbitration award on January 25 and 26, 1990.

By letter dated January 25, 1990, the plaintiffs' attorney informed Gronager of the award amount and the plaintiffs' intent to seek immediate satisfaction of the award. The letter referred to a previous letter concerning a warning not to attempt to hinder collection through the making of transfers or the assumption of obligations. Although the letter was sent by certified mail, return receipt requested, the plaintiffs' attorney never received such receipt.

On January 29, 1990, Gronager transferred his interest in a condominium to Gotch by quitclaim deed, which stated that the consideration for the conveyance was "$1.00 and other valuable consideration." On that same day, Gronager's attorney recorded the quitclaim deed and filed a real estate conveyance tax return with the town of Greenwich, indicating that no conveyance taxes were due on the transaction because the consideration paid was less than $2000. Gotch did not participate in the preparing and filing of the quitclaim deed and, at the time of Gronager's conveyance to her, did not provide any consideration. Since October, 1986, the defendants had lived together in the condominium, the title to which was in both names.

The condominium was purchased for $450,000, with $150,000 contributed by Gronager, $25,000 contributed by Gotch, and a purchase money mortgage in the amount of $275,000. Gronager's share of the down payment was financed, in part, by a loan to him from Gateway. Prior to January 29, 1990, Gronager made all payments on the condominium mortgage and all payments of the condominium common charges, and he

declared all interest deductions on his personal tax returns. Gotch reimbursed Gronager for approximately one half of these payments. On the basis of these contributions and mortgage obligations, Gronager owned 65 percent and Gotch owned 35 percent of the condominium.

On the day of the conveyance, Gronager prepared a self-styled loan agreement, which was typed and signed by Gotch. The agreement provided that Gotch, in recognition of full ownership of the condominium, agreed to pay Gronager $117,000 on January 29, 2015, and $4680 per year in interest on the loan until its maturity date or until the loan was repaid. The agreement was unsecured and not witnessed or acknowledged by anyone.

At the time of the conveyance, Gotch was aware of the arbitration claim and the amount of damages requested by the plaintiffs and the possible unfavorable consequences of the arbitration. The provisions of the loan agreement stated that there was no down payment required, provided for a low interest rate, and contained no acceleration clause in the event of a default.

Although Gronager claimed to have received $46,958.04 in interest payments on the loan from Gotch, their tax returns did not reflect this claim. Gotch's payments actually constituted payments to assist Gronager in covering shortages in Gateway's customer accounts because her checks to him were endorsed by Gronager on behalf of Gateway and deposited in Gateway's account.

In April, 1990, Gronager and Gateway moved to vacate the award of the arbitrators in favor of the plaintiffs in the United States District Court for the District of Massachusetts. In response to the motion, the plaintiffs moved for an order requiring the posting of a security bond or, in the alternative, a writ of attachment. On July 23, 1990, the District Court denied Gateway and

Gronager's motion to vacate, denied the plaintiffs' motion for bond or attachment as moot since judgment was imminent, granted the plaintiffs' motion to confirm the award, and ordered that judgment enter for the plaintiffs in the amount of $227,250, with costs and interest accruing from January 24, 1990, at the rate of 12 percent. On August 30, 1990, the District Court issued a Certification of Judgment in accordance with its decision of July 23, 1990.

As of August 30, 1990, Gronager was jointly and severally liable to the plaintiffs, along with the other parties to the arbitration, for $243,537.28, and as of January 9, 1992, the amount totaled $274,489.50. On January 9, 1992, the plaintiffs recovered $98,290.20 from Weston. The plaintiffs seek the balance of their federal judgment from the defendants.

The referee found that Gronager, with the intent to defraud or hinder the plaintiffs' ability to collect on a debt, transferred his interest in property to Gotch for no consideration. He also found that Gronager was insolvent at the time of the fraudulent conveyance and that Gotch knowingly participated in the transaction. The referee recommended that damages be awarded against Gronager "in the amount of $176,190.30, together with interest under [General Statutes] § 37-3a from January 9, 1992 until the date of judgment." The referee also recommended that the transfer of Gronager's interest in the property be set aside "to the extent necessary to satisfy the plaintiffs' damages, but limited to the defendant Gronager's sixty-five (65%) percent interest in the subject property."

The referee filed a corrected report as a result of a motion by the plaintiffs and, among other corrections, recommended "damages against Gronager and Gotch jointly and severally, in an amount equal to $177,873.16 as of January 9, 1992, plus interest at ten (10%) percent

under [General Statutes] § 37-3a to the date of judgment . . . ."[4]

In its memorandum of decision, the trial court adopted the factual findings of the referee, but concluded that the referee should not have applied the Uniform Fraudulent Transfer Act (act), General Statutes §§ 52-552a through 52-552*l*. The trial court, quoting *Molitor* v. *Molitor*, 184 Conn. 530, 535, 440 A.2d 215 (1981), found the application of the statute of no consequence " 'since the uniform act . . . is largely an adoption and clarification of the standards of common law.' " The trial court found, however, that the act differed from the common law and General Statutes (Rev. to 1991) § 52-552[5] in that the act shifts the burdens of proof and provides for remedies against the transferee. The trial court, nevertheless, found that "[a]ny change in the burden of proof is not relevant, as the [referee] found that the plaintiffs met their burden under § 52-552 or the [act]."

The trial court also concluded that because the act did not apply and neither § 52-552 nor the common law provided a monetary remedy against the transferee beyond the fraudulently conveyed property itself or the proceeds thereof, Gotch was not jointly and severally liable for the underlying debt of Gronager. The trial court adopted the referee's original recommendation dated January 21, 1993, and also adopted the attorney trial referee's corrected recommendation as to the amount of damages against Gronager only.

# I

## APPEAL

Gronager first argues that the attorney trial referee's factual findings to support a fraudulent conveyance

[4] This change in the damages' amount represented a correction in the calculation of interest and not a change in the principal.

[5] See footnote 9.

were clearly erroneous, and, therefore, the trial court improperly adopted them. In order to determine whether the attorney trial referee's findings, as adopted by the trial court, were clearly erroneous, we must determine if they were supported by the evidence.[6] *Stamford* v. *Kovac*, 36 Conn. App. 270, 274–75, 650 A.2d 626 (1994).

" 'A party who seeks to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and that, as a result, the transferor was unable to meet his obligations (constructive fraud) or that the conveyance was made with fraudulent intent in which the transferee participated (actual fraud).' *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 42, 623 A.2d 496 (1993)." *Farrell* v. *Farrell*, 36 Conn. App. 305, 309, 650 A.2d 608 (1994). The trial referee found by clear and convincing evidence that both defendants participated in the conveyance of the condominium with actual intent to hinder or defraud the plaintiffs from collecting their judgment, and that as a result of the conveyance, the defendant Gronager was unable to meet his financial obligations.

Gronager claims that the attorney trial referee improperly determined the value of his assets at the time of the conveyance in determining that as a result of the conveyance he was unable to meet his obligations. He argues that his testimony established the overall worth of his interest in Gateway as sole shareholder at $745,000, $400,000 of which constituted goodwill value. The attorney trial referee, however, chose not

---

[6] The plaintiffs claim that Gronager failed to comply with Practice Book § 439 because he did not provide the trial court with a transcript of the proceedings before the attorney trial referee and, therefore, is precluded from challenging the referee's factual findings. The findings of the referee, however, are adequate for the purposes of our review. Furthermore, the requirements of § 439 apply to the necessity of a transcript for the purposes of the trial court's review and do not apply to this court.

to believe Gronager's testimony and found, on the basis of the evidence, that Gronager's interest in the corporation was negligible as of January 29, 1990. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. 'The resolution of conflicting factual claims falls within the province of the trial court.' *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). Additionally, '[w]e cannot retry the facts or pass on the credibility of . . . witness[es].' Id." *Griffin* v. *Planning & Zoning Commission*, 30 Conn. App. 643, 652, 621 A.2d 1359 (1993). More specifically, the attorney trial referee found that, on December 31, 1989, Gateway suffered a decline in cash flow in excess of $900,000 and suffered losses in excess of $30,000.

In September, 1989, the state of Massachusetts sought penalties against Gateway, and in September, 1990, barred Gateway and Gronager from doing business in that state. As of January or February, 1990, the Connecticut banking department imposed various penalties on Gateway, including temporarily barring it from soliciting trades for five days and imposed $25,000 in fines. Furthermore, the trial referee found that "[a] scant seven (7) months after the transfer, in August, 1990, Gateway would shut down [and] was to be forced into involuntary bankruptcy in 1991."[7]

Gronager also argues that at the time of the conveyance, he had an interest in residential property that was improperly excluded in calculating the value of

[7] We recognize that, under the common law, an individual or corporation's value should be assessed as of the time of the alleged fraudulent conveyance. *State* v. *Martin*, 77 Conn. 142, 144, 58 A. 745 (1904). Ample evidence of Gateway's worth at the time of the conveyance supported the referee's assessment of its value, and we cite this evidence only because it supports, with hindsight, the correctness of the referee's factual determination.

his assets. The referee concluded that the defendant's interest in a residential property, owned jointly with his first wife, Rose Gronager (Rose), at the time of the condominium conveyance, had no significant value because it was then subject to a valid claim to which Gronager had voluntarily relinquished his interest. In August, 1988, Rose initiated a dissolution action based on a claim of abandonment, in which she sought permanent occupancy and possession of a jointly owned house, in which Gronager had not resided since 1983. In August, 1990, pursuant to a voluntary settlement of the dissolution action, the residence was conveyed to Rose by quitclaim deed prepared on February 9, 1990. Gronager denied knowledge of Rose's claim and denied any intent to voluntarily relinquish his interest in the marital property at the time of the conveyance of the condominium. The referee, however, chose to disbelieve this testimony, relying instead on other evidence.

The attorney trial referee found that Gronager had assets consisting of an individual retirement account and a bank account, which totaled approximately $37,000, and that his liabilities exceeded that amount.

Gronager also argues that the referee incorrectly determined the amount of his liabilities. First, he claims that the referee should not have included the full amount he owed on two mortgages, totaling $295,000, but should have apportioned the amount of liability based on the percentage of ownership in the mortgaged property. The referee properly found that Gronager was liable for these mortgages jointly and severally, and, therefore, could have become liable for the full amount of the mortgages in case of default.

Gronager next argues that the referee should not have included the arbitration award of $227,250 as a liability because it was not until the denial of the motion to vacate the award on July 23, 1990, and the granting

of the plaintiffs' motion to confirm that the "contingent award" became a liability. The fact that the arbitration award was not reduced to a judgment until August 30, 1990, did not preclude the referee from including the award amount as a debt as of the date of his conveyance of his interest in the condominium to the defendant Gotch. See *White* v. *Amenta*, 110 Conn. 314, 318, 148 A. 345 (1930).

Because Gronager's liabilities exceeded $500,000 and his assets were no greater than $40,000, the referee properly concluded that he was insolvent at the time of the transfer. The referee stated: "It has been discussed before that Gronager's assets were clearly insufficient to satisfy the Crepeau award and he was insolvent after the conveyance. Where the conveyance leaves the grantor without sufficient property to meet existing debts, it cannot be supported as against creditors unless the consideration is one which the law terms valuable. *Clarke* v. *Black*, 78 Conn. 467, 62 A. 757 (1906). Here, Gronager received no valuable consideration for the transfer and he was insolvent."

Gronager does not dispute numerous other factual findings giving rise to the conclusion of a fraudulent conveyance. The referee found that the transfer of the condominium was made to a relative,[8] and that Gronager retained possession or control of the property transferred. Both defendants admitted in their testimony that they concealed the transfer and the loan agreement. See *Beers* v. *Botsford*, 13 Conn. 146, 153 (1839). Gotch testified that they did not disclose the loan agreement to their lawyers, friends, business associates, family members, or the plaintiffs until after Gateway had ceased operations in August, 1990. The transfer

---

[8] Gotch married Gronager in December, 1990, when his divorce from his first wife became final. The referee determined that the delay in marriage was due to the lack of that divorce, and that under such circumstances, Gotch should be considered a relative of Gronager.

occurred after a lawsuit had been filed, thus, establishing an inference that the conveyance was made in order to frustrate the plaintiffs' execution on the judgment. See *Burakowski* v. *Grustas*, 134 Conn. 205, 207, 56 A.2d 461 (1947).

We conclude that the trial court correctly adopted the referee's findings of a fraudulent conveyance.

## II

## CROSS APPEAL

The plaintiffs allege that the trial court improperly reversed the referee's recommendation of an award of damages against Gotch. The plaintiffs claim that, in addition to setting aside a fraudulent conveyance, common law permits a party to recover damages against a transferee who knowingly participates in the fraudulent conveyance.

The following additional facts are necessary to resolve this claim. The attorney trial referee, in response to the plaintiffs' motion, issued a corrected report that recommended an award of damages against both defendants, jointly and severally, in the amount of $177,873.16, plus interest. This amount represented the outstanding debt still due the plaintiffs from the original judgment against Gronager. The referee found that by virtue of Gotch's knowing participation in the fraudulent conveyance, she became jointly and severally liable for the underlying debt of Gronager.

The trial court rejected this amended recommendation because it concluded that under common law principles and General Statutes (Rev. to 1991) § 52-552,[9] the

---

[9] General Statutes (Rev. to 1991) § 52-552 provides: "All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs." General Statutes (Rev. to 1991) § 52-552 was repealed by No. 91-

plaintiffs were not judgment creditors on January 29, 1990, and, therefore, they could not invoke a remedy of damages against Gotch as a transferee. The trial court, relying on *Derderian* v. *Derderian,* 3 Conn. App. 522, 529, 490 A.2d 1008, cert. denied, 196 Conn. 810, 811, 495 A.2d 279 (1985), concluded that the plaintiffs could recover no more from Gotch than the property itself or any proceeds from the fraudulent conveyance and that § 52-552 did not provide for a remedy of punitive damages. We do not apply § 52-552 to this case because the plaintiffs did not rely on it for their cause of action, and do not argue in their brief that the statute is applicable.[10]

The plaintiffs primarily rely on *Nowsky* v. *Siedlecki,* 83 Conn. 109, 75 A. 135 (1910), and *Finance Corp. of New England, Inc.* v. *Scard,* 100 Conn. 712, 124 A. 715 (1924), to support their claim. They argue that *Derderian* v. *Derderian,* supra, 3 Conn. App. 522, failed to follow those two cases or to cite them. They claim that, contrary to *Derderian, Nowsky* and *Finance Corp. of New England, Inc.,* allow damages to be awarded against both wrongdoers in an action at law and the relief of setting aside the fraudulent conveyance in an equitable action against both wrongdoers.

*Derderian* v. *Derderian,* supra, 3 Conn. App. 529, states that "[c]ommon law principles do not authorize a general creditor to pursue the transferee in a fraudulent

---

297, and replaced with §§ 52-552a through 52-552*l,* the Uniform Fraudulent Transfer Act. The plaintiffs do not claim that this act permits a remedy of damages against Gotch. The trial court concluded that the act could not be retroactively applied to the conveyance in this case, which had occurred prior to the act's passage.

[10] The plaintiffs' complaint as amended consisted of counts alleging a fraudulent conveyance at common law and an unfair trade practice under § 42-110a et seq. "For a party to be entitled to a statutory remedy, her prayer for relief must be specifically based on that statutory remedy. *Alaimo* v. *Royer,* 188 Conn. 36, 43, 448 A.2d 207 (1982)." *Derderian* v. *Derderian,* supra, 3 Conn. App. 529.

conveyance action for anything other than the specific property transferred or the proceeds thereof. *Austin* v. *Barrows*, 41 Conn. 287, 299 (1874); *Smith* v. *Blake*, 1 Day 258, 262 (1804); see also annot., 11 A.L.R.4th 345; 37 C.J.S., Fraudulent Conveyances § 279; Glenn, Fraudulent Conveyances (Rev. Ed. 1940) § 74." Nothing in that statement is inconsistent with the cases cited by the plaintiffs. *Derderian* was a partition action in which the defendant counterclaimed to set aside a fraudulent conveyance and in which no damages were claimed. The statement does not address the issue of whether both parties to the fraudulent conveyance may be liable for the entire debt of the judgment debtor where the transferee is not a judgment debtor of the general creditor.

Connecticut case law clearly allows, in one lawsuit, a claim for damages—an action at law—and a claim that a conveyance should be set aside as fraudulent—an equitable action. *Finance Corp. of New England, Inc.* v. *Scard*, supra, 100 Conn. 717–18; *Nowsky* v. *Siedlecki*, supra, 83 Conn. 112; see also *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 302, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). The issue of the present case, however, is not whether Connecticut procedure allows equitable and legal causes of action to be joined in one suit, but whether the assets of a transferee who is not a judgment debtor, but who participates in the fraudulent conveyance, can be reached to pay any deficiency in the judgment owed to the judgment creditor by the transferor, when the value of the property conveyed is insufficient to satisfy the debt, absent a statute that provides for such a remedy.

Two cases provide an answer to that question. When the sole claim in an action against the transferee, where there has been a fraudulent conveyance, is for damages, and the value of the property is insufficient for the payment of the entire debt of the transferor, compensa-

tion for the excess of the debt of the transferor over the value of the property could not succeed at common law. See *Austin* v. *Barrows*, 44 Conn. 287, 299 (1874). The case of *Nowsky* v. *Siedlecki*, supra, 83 Conn. 109, supports the same proposition in the context of a combined action at law for damages and an equitable action to set aside a fraudulent conveyance. If the transferee can prove a contribution to the original purchase price of the property, the interest in the property as to that contribution is not reachable by a general creditor of the transferor-debtor, but the transfer of the interest of the debtor may be set aside as a fraudulent conveyance. Id., 119. Furthermore, any supplemental judgment for the difference between the value of the fraudulent conveyance and the debt owed by the transferor can be had only against the transferor-debtor. Id.

*Nowsky* v. *Siedlecki*, supra, 83 Conn. 112, states: "A judgment creditor who complains that his debtor has transferred all his property, when insolvent, to his wife, by a voluntary and fraudulent conveyance, and that she participated in the fraud, has, among other remedies, one at law for compensation in damages against both the wrong-doers; and one in equity to have the fraudulent conveyance set aside. The plaintiff sought both these remedies, and had a right to seek both, in a single action." This language is relied on by the plaintiffs to support their conclusion that Gotch can be liable for the entire debt of Gronager to the extent the plaintiffs have not been made whole. The phrase "compensation in damages" in the context of *Nowsky* relates to compensation of damages for the value of the fraudulent conveyance and not to damages in the amount of the entire debt of the transferor to the extent it exceeds such value.

We conclude that the holding in *Derderian* that, at common law, a party may not recover damages from a transferee beyond the property conveyed or the pro-

ceeds thereof does not conflict with other cases, which also hold that, without a statute to the contrary, the amount of damages to be recovered from a transferee of a fraudulent conveyance cannot exceed the value of the property transferred. Furthermore, none of the cases relied on by the plaintiffs awarded damages to the party alleging a fraudulent conveyance beyond the property itself or the value of the property. We conclude that the trial court properly rejected this portion of the referee's award, and that the plaintiffs' cross appeal must fail.

The judgment is affirmed.

In this opinion the other judges concurred.