[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. In a memorandum dated September 27, 1996 the court found, inter alia, that the plaintiff, Edward Corcoran, had fraudulently transferred to the third-party defendant, Jennie Finkle, and her solely owned corporation, E.J. Corcoran Transportation, Inc., the stock and the business of Corcoran's Transportation, a trucking business jointly owned and operated by Mr. and Mrs. Corcoran, with the intent to deprive Mrs. Corcoran of her equitable interest in that business. The court further found that Mrs. Corcoran is entitled to compensation for her share in the value of Corcoran's Transportation and valued that share at $92,500, one-half of the value attributed to Corcoran's Transportation at the time the fraudulent transfer was in progress.
In arriving at the total value of the corporation, the court relied on Exhibit 11, a financial affidavit filed in this action by Mr. Corcoran on October 21, 1994. Connecticut marital cases recognize several methods of valuing a closely held business. SeeTurgeon v. Turgeon, 190 Conn. 269, 274-76 (1983); Stearns v.Stearns, 4 Conn. App. 323, 327-28 (1985). None of the parties availed themselves of these methods at the trial of this matter. Exhibit 11, however, was prepared by Mr. Corcoran not long after an appraisal of the business in 1994. Moreover, the value assigned to the corporation on that affidavit is reasonably related to the purchase price of the business, $156,000 in 1986, and supported by the corporate tax returns filed in 1993 and 1994. Finally, Mr. Corcoran's financial affidavit has the usual indicia of reliability of any admission of a party. See Tait and LaPlante, Connecticut Evidence, § 11.5.1.
In choosing to value the business as of October 1994, the court is aware of cases such as Sunbury v. Sunbury,
CT Page 1130216 Conn. 673, 676 (1990), and Zern v. Zern, 15 Conn. App. 292, 296 (1988), which hold that property is to be valued as of the date of dissolution. Sunbury is not applicable to this situation, however, because there the question was whether the property should be valued as of the date of the parties' original dissolution or as of the date of the court's hearing after a remand.
Zern is based on a broader principle; viz., that "financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible" and not their circumstances on the date of an earlier separation. Cuneo v. Cuneo, 12 Conn. App. 702, 709 (1987). Neither Zern nor Cuneo were cases in which a fraudulent transfer of a marital asset had occurred. In such a case the reasonable time to value the asset is as of the date of its transfer, not the date of dissolution. Otherwise, the party defrauded would be subject to the vagaries of the asset's declining or increasing value after the transfer. See generally 37 C.J.S., Fraudulent Conveyances § 279(b). Moreover, no evidence has been offered by Mr. Corcoran or Mrs. Finkle that the value of Corcoran's Transportation at the present time is any different than it was in October 1994. They expressly declined the court's invitation to offer any evidence at a hearing held on December 13, 1996.
In addition to finding that Mrs. Corcoran is entitled to compensation for her equitable share of the marital asset fraudulently transferred to Mrs. Finkle, the court found that she is entitled to continuing support from Mr. Corcoran for a period of time and deferred determination of the extent of that support until it had made the orders called for by its findings as to the fraudulent transfer. See § 46b-82, C.G.S.
Having made the findings noted above, the court scheduled a hearing "concerning Mrs. Finkle's financial condition and that of her corporation and the availability of the assets and earnings of the corporation to satisfy her obligations, as a third party defendant, to Mrs. Corcoran". Memorandum of September 27, 1996, p. 24. The purpose of that hearing was to enable the court "to enter appropriate equitable orders compensating Mrs. Corcoran in accordance with the court's finding" of a fraudulent transfer. Id. The hearing was scheduled for November 15 and continued to December 13, 1996.
At that time all of the parties declined to offer additional CT Page 1131 evidence. Mr. Corcoran and Mrs. Finkle objected to the hearing, itself. Although on November 15 Mrs. Finkle had offered several exhibits concerning her corporation's financial condition since its inception in 1994, they had been admitted only for the limited purpose of allowing the court to rule on Mrs. Corcoran's attorney's request on that date for a continuance, inasmuch as the exhibits had been made available to him only a day or two before the hearing. Therefore, those exhibits were not considered by the court in making the orders contained herein.
Before setting forth its orders as to Mr. Corcoran and Mrs. Finkle, the court must deal with the argument forcefully made by them that it may not grant financial relief as to Mrs. Finkle because the third party complaint filed in 1994 was never amended to seek such relief, nor were proposed orders seeking such relief ever filed by Mrs. Corcoran. It is true that Mrs. Corcoran never sought to amend her original third-party complaint until the last day of trial, June 26, 1996. On that day her counsel informed the court that he intended to seek the court's permission to amend the complaint, but he did not have the proposed amendment available to submit to the court or the other parties even though all of the evidence had concluded, and the parties were about to commence final argument. For that reason the court denied his request for permission to amend the third party complaint.
That original complaint sought the return to Mrs. Corcoran of all stock certificates held by Mrs. Finkle in Corcoran's Transportation or the "cash value of any stock that has been sold, transferred or is otherwise unable to be returned". As pointed out in the court's memorandum of decision of September 27, 1996, it was clear from the first day of trial in this matter, in January 1996, that no stock certificates ever changed hands between Mr. Corcoran and Mrs. Finkle. What Mr. Corcoran transferred to Mrs. Finkle was his ownership interest in Corcoran's Transportation, which purported to be the entire ownership interest, and the business of the corporation, through the transfer in 1994 and 1995 of the accounts and customers of Corcoran's Transportation to a new corporation formed by Mrs. Finkle, E.J. Corcoran Transportation, Inc. Thus, it was clear from the first day of trial that there would be no order concerning the return of stock certificates, and that the only orders, should the court accept the argument that a fraudulent transfer had occurred, would be financial orders seeking to compensate Mrs. Corcoran for her equitable share in the assets. CT Page 1132
Mrs. Finkle, the third party defendant, was on notice by virtue of the alternative relief sought in the original complaint that she might be called upon to compensate Mrs. Corcoran for a fraudulent transfer by way of cash rather than stock certificates. Therefore, it does not seem fundamentally unfair to Mrs. Finkle to hold her liable in damages for the value of the business rather than for the return of its stock. Corcoran's Transportation was a closely held corporation, the only owners being Mr. and Mrs. Corcoran. In such a situation the value of the stock is the value of the corporation. Indeed, the value of $185,000 assigned to the business by Mr. Corcoran on his financial affidavit of October 21, 1994, Exhibit 11, was described as the value of "shares of stock" in Corcoran's Transportation, Inc. Mrs. Finkle was given sufficient notice by the original complaint that not only the return of stock but the cash value of that stock might be ordered by the court.
Finally, innumerable Connecticut cases hold that "the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage". See, e.g.,Pasquariello v. Pasquariello, 168 Conn. 579, 585 (1975). The court is not limited in ordering equitable relief by the particular prayers for relief submitted by the parties. In this case equity requires that both Mr. Corcoran and Mrs. Finkle, who conspired to defraud Mrs. Corcoran of her rightful share in Corcoran's Transportation, be ordered to compensate her for the loss of that share.
Relief As To Mr. Corcoran
The objective of Mr. Corcoran's transfer of the stock and the business of Corcoran's Transportation to Mrs. Finkle was to defeat Mrs. Corcoran's equitable share in the only marital asset. As the Supreme Court did in Watson v. Watson, 221 Conn. 698
(1992), this court considers Corcoran's Transportation part of the marital estate and, rather than setting aside the transfer, will award Mrs. Corcoran lump sum alimony in the amount of her share in that asset. "Such an outcome prevents a party to a dissolution action from inequitably benefiting from his fraudulent transfer of . . . property by reducing the assets that would otherwise be included in a marital estate and available for assignment pursuant to General Statutes § 46b-81." Id., 709. See Miller v. Miller, 22 Conn. App. 310 (1990). CT Page 1133
On the question of periodic alimony, the court found in its memorandum of decision of September 27, 1996 that, "[a]t the present time Mr. Corcoran's income, earning capacity and employability are considerably greater than Mrs. Corcoran's". While the court also found that Mrs. Corcoran exaggerated her present physical ailments, her present employability is problematic, and she will need time to obtain employment or the skills to obtain employment. The size of the lump-sum alimony award and Mr. Corcoran's four years of temporary alimony will limit the duration of his obligation to support Mrs. Corcoran post-judgment.
The court also found Mr. Corcoran's testimony consistently unreliable as far as his personal finances are concerned. It was clear that his earning capacity is greater than his present earnings, and that he has failed to earn up to his capacity[1]. In such a situation the best evidence of what Mr. Corcoran is able to pay Mrs. Corcoran by way of periodic alimony is what he has paid her for the past four years; viz., $500 a week. That this amount, together with the installment payment to be ordered on the lump sum alimony and counsel fees, is greater than his stated income is no bar to this order. See Siracusa v. Siracusa,30 Conn. App. 560, 564 (1993).
Finally, Mrs. Corcoran has no resources with which to pay the sizeable counsel fees she has incurred, and to make her pay all of those fees out of the money payable to her by Mr. Corcoran via the court's other orders would undermine those orders. At the same time, the court considers the hourly rate and the amount of hours claimed by her counsel to be unreasonable. Based on the court's familiarity with the case, which was tried over the course of six months, and the file in this matter, and considering the criteria of § 46b-62 of the General Statutes, the court will award counsel fees to Mrs. Corcoran in the amount of $20,000, plus expenses of $2,900, payable in installments by Mr. Corcoran.
Relief As To Mrs. Finkle
The business of Corcoran's Transportation was transferred by Mr. Corcoran to Mrs. Finkle's solely owned corporation, E.J. Corcoran Transportation, Inc. At the time of the transfer the value of Corcoran's Transportation was $185,000. No evidence was introduced by Mrs. Finkle or any other party as to the present value of E.J. Corcoran Transportation, Inc. or as to the quantum CT Page 1134 of its business which consists of accounts transferred to it from Corcoran's Transportation. Given these facts, the court finds that Mrs. Finkle has effectively mingled the business of Corcoran's Transportation with the business of E.J. Corcoran Transportation, Inc. and placed the business of the former, a marital asset, beyond the reach of Mrs. Corcoran.
In such a situation it is clear that a fraudulent transferee such as Mrs. Finkle may be liable by way of a personal judgment to the "creditor", in this case Mrs. Corcoran. See generally 37 C.J.S., Fraudulent Conveyances § 444; 37 Am.Jur.2d, Fraudulent Conveyances § 157.
 Equity in such events [i.e., where fraudulently transferred property has been placed beyond the reach of the court] will not allow itself to be outwitted or frustrated. It has the power to and will go to the extent necessary to achieve equitable results. If a money judgment against the fraudulent transferee will accomplish the desired results, it will be imposed in favor of the judgment creditor.
Miller v. Kaiser, 433 P.2d 772, 775-76 (Col. 1967). See alsoDamazo v. Wahbey, 305 A.2d 138, 142 (Md. 1973); Spaziano v.Spaziano, 410 A.2d 113, 115 (R.I. 1980); McElhanon v. Hing,728 P.2d 256, 264 (Ariz. 1985); Richman v. Leiser, 465 N.E.2d 796, 800
n. 6 (Mass. 1984). This principle has been recognized in Connecticut as well. Crepeau v. Gronager, #CV90-0111833 (Superior Court, Stamford/Norwalk Judicial District, 1993) p. 12; affirmed,41 Conn. App. 302 (1996). The only limitation upon this remedy is that the amount of the money judgment not exceed the value of the "specific property transferred or the proceeds thereof". Id., 316-17. In this case the value of the property transferred was $185,000, and the court will limit its personal judgment against Mrs. Finkle to an amount which is 50% of that amount, the value of Mrs. Corcoran's equitable share in that asset.
The court has considered all of the criteria of Sections46b-62, 46b-81 and 46b-82 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "The court is not obligated to make CT Page 1135 express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leov. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders:
 1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
 2. The plaintiff shall pay to the defendant as lump sum alimony the sum of $92,500, payable over ten years in monthly installments of $771. The first monthly installment shall be due on March 1, 1997.
 3. Pursuant to § 46b-81(a), all of the plaintiff's rights in a certain payment of $5,000 from the purchaser of an authority previously owned by Corcoran's Transportation and sold by the plaintiff are assigned to the defendant.
 4. The plaintiff shall pay to the defendant as periodic alimony for a period of three years the sum of $500 per week. After this three-year period the plaintiff shall continue to pay the defendant periodic alimony in the amount of $1.00 per year as security for his payment of the lump sum alimony ordered in paragraph 2, supra. The award of $1 per year alimony shall be modifiable only if the plaintiff fails to make timely installment payments of lump sum alimony and shall terminate upon the satisfaction of the plaintiff's and the third party defendant's obligations to the defendant.
 5. Within 30 days of the date of dissolution the plaintiff shall pay to the defendant the sum of $1,700, which represents unpaid pendente lite alimony found to CT Page 1136 exist at the conclusion of a contempt hearing in October 1995.
 6. For counsel fees, the plaintiff shall pay to the defendant the sum of $20,000, which represents the court's finding of the reasonable amount of hours required by this litigation at an hourly rate of $150, which the court finds to be fair and reasonable. The plaintiff shall also pay costs in the amount of $2,900. Plaintiff shall pay these counsel fees and costs over three years in monthly installments of $636, beginning with the month of March 1997.
 7. The third party defendant shall pay to the defendant, as compensation for the defendant's 50% share in a marital asset fraudulently transferred to the third party defendant, the sum of $92,500. The third party defendant's liability to the defendant shall be joint and several with the plaintiff's liability and shall be secured by a constructive trust on the assets and profits of E.J. Corcoran Transportation, Inc. This constructive trust shall apply to all assets and accounts of E.J. Corcoran Transportation, Inc., and the defendant shall receive any proceeds from the sale of any accounts or equipment of the corporation, and, if the corporation should be sold, shall receive the net proceeds of any such sale. The defendant shall have access to all books and records of E.J. Corcoran Transportation, Inc. at reasonable times during business hours, with 24 hours notice to the third party defendant, and the third party defendant shall cause to be prepared and provide to the defendant comprehensive quarterly reports showing the income, expenses, assets and liabilities of the corporation.
SHORTALL, J.