ELIZABETH K. HIRSCHFELD, EXECUTRIX
(ESTATE OF ALVIN J. HIRSCHFELD) *v.*
T. DONALD HIRSCHFELD
(AC 17144)

Spear, Sullivan and Kulawiz, Js.

Argued May 27—officially released September 8, 1998

*Linda L. Morkan*, with whom, on the brief, were *Frank F. Coulom, Jr.*, and *Bradford S. Babbitt*, for the appellant (defendant).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, T. Donald Hirschfeld, appeals from the trial court's judgment ordering him to purchase the interest of the plaintiff's decedent in a partnership pursuant to a contract between the decedent and the defendant. The defendant claims that the trial court improperly (1) enforced the contract in favor of the plaintiff and (2) concluded that only the defendant, rather than the other partners, was obligated to purchase the plaintiff's interest in the partnership. We affirm the judgment of the trial court.

The parties stipulated to the following facts at trial. On January 23, 1969, the defendant and his brother, the decedent Alvin J. Hirschfeld, executed a "Buy and Sell Agreement." The agreement referred to the brothers as "partners" in the ownership of a Howard Johnson's motel in Westfield, Massachusetts. The agreement provided in part as follows: (1) under paragraph one, neither partner would transfer his interest in the

partnership to another person without the consent of the other partner unless he had first offered to sell his interest to that partner; (2) under paragraph two, each partner would take out life insurance naming the other partner as the beneficiary and (3) under paragraph four, "[u]pon the death of either Partner, the surviving Partner shall purchase and the estate of the decedent shall sell all of the interest of the Partnership now owned or hereafter acquired by the Partner who is the first to die. The purchase price shall be equal to the amount of the insurance." The agreement purported to bind "the Partners, their heirs, legal representatives, successors, and assigns . . . ."

On December 12, 1985, the defendant and Alvin executed an amendment to their buy and sell agreement, whereby they agreed to "change, delete parts [of], and amend" the original agreement. Paragraph one was amended to allow the partners to transfer or sell a partnership interest to members of their immediate family. Paragraph four, the primary focus of this appeal, was replaced in its entirety and rewritten to provide that "[u]pon the death of any partner the deceased partner's interest shall be disposed of as provided for by that partner or as stipulated by law. The value of the partnership, or any portion thereof, shall be determined by bona fide offers to purchase or by appraisal by not less than two appraisers chosen by the largest interest holders or their estate or heir. The purchase price for the entire partnership shall not be less than $700,000.00." Paragraph six, which originally granted the surviving partner the right to purchase from the deceased partner's estate any insurance policy that named him as a beneficiary, was deleted in its entirety. Finally, the amended agreement reflected that four additional family members had joined the partnership since 1969, and listed the distribution of the partnership interests among all six partners.

Alvin J. Hirschfeld died on May 2, 1993. At the time of his death, his interest in the partnership was 11.33 percent. Through a residuary clause in his will, his partnership interest passed to his wife, the plaintiff. The plaintiff commenced this action in May, 1995, claiming that the defendant was obligated to purchase her husband's partnership interest pursuant to the 1985 amended buy and sell agreement. The plaintiff also sought an accounting of her husband's partnership interest.[1] On February 27, 1997, the parties waived a trial by jury and submitted the issues to the trial court on the basis of certain procedural and factual stipulations. After oral argument, the trial court, having also considered the parties' written briefs, determined that the defendant was obligated to purchase the plaintiff's interest in the partnership. The trial court found that the value of the plaintiff's share in the partnership was 11.33 percent of $700,000 plus interest and, accordingly, awarded $99,658.96 to the plaintiff. This appeal by the defendant followed.

I

The defendant first claims that the trial court improperly concluded that the amended agreement required him to purchase the plaintiff's partnership interest. We disagree.

The defendant agrees that according to the terms of the 1969 agreement, he would have been required to purchase the plaintiff's partnership interest. He argues, however, that such a buyout was not required under the 1985 amended agreement. Specifically, the defendant asserts that paragraph four of the amended agreement

---

[1] Before trial, the plaintiff withdrew her claims of conversion of her husband's partnership interest and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendant also withdrew his counterclaims alleging the decedent's neglect of and unjust enrichment from the partnership.

is ambiguous, and the plaintiff failed to prove that the parties intended the mandatory buyout of the deceased partner's interest in the partnership by the surviving partner.

We begin our analysis of this issue by noting that our review of the trial court's judgment is plenary. In this case, "the trial court's determinations were based on a record that consisted solely of a stipulation of facts, written briefs, and oral arguments by counsel. The trial court had no occasion to evaluate the credibility of witnesses or to assess the intent of the parties in light of additional evidence first presented at trial. The record before the trial court was, therefore, identical with the record before this court. In these circumstances, the legal inferences properly to be drawn from the parties' definitive stipulation of facts raise questions of law rather than of fact. . . . Accordingly, our review of the ruling of the trial court in this case is plenary." (Citations omitted; internal quotation marks omitted.) *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163–64, 671 A.2d 813 (1996).

We first consider the defendant's assertion that the 1985 agreement, as amended, is ambiguous. In reviewing this claim, we are guided by well established rules. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary

meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control*, 244 Conn. 280, 291, 709 A.2d 549 (1998), quoting *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997).

In the present case, we agree with the defendant that the 1985 amendment to the 1969 buy and sell agreement is ambiguous. As originally written in the 1969 agreement, paragraph four clearly stated that "[u]pon the death of either Partner, the surviving Partner *shall purchase* and the estate of the decedent *shall sell* all of the interest of the Partnership now owned or hereafter acquired by the Partner who is the first to die." (Emphasis added.) The 1985 amendments to paragraph four, however, deleted the unequivocal "shall buy" and "shall sell" language, but did not declare that the buyout obligation was revoked. We determine, therefore, that the 1985 amendment rendered the buy and sell agreement ambiguous. Nevertheless, we conclude that the parties intended the buyout provision to survive the 1985 amended agreement.

Although the "shall purchase" and "shall sell" language was deleted in 1985, the text added to paragraph four was clearly relevant to a buyout requirement. Specifically, the amended version of paragraph four provides that the deceased partner's interest shall be disposed of as provided for by that partner or as stipulated by law. The paragraph further states that the purchase price for the entire partnership shall be no less than $700,000. In construing the meaning of these clauses, we are mindful that they are contained in an amendment to (not a revocation of) a *buy and sell agreement*. Thus, we construe the amendments to paragraph four as primarily altering the mechanism by which a buyout would be funded. Whereas the original agreement provided that a buyout would be funded

with the proceeds from insurance policies, the amended agreement deleted the requirement that each partner maintain insurance on himself. Since the purchase price of the deceased partner's interest was no longer to be determined by the value of his insurance policies, however, the amendments to paragraph four provided a new method of valuing the partnership for buyout purposes.

In addition, General Statutes § 34-69 generally provides that the death of any partner dissolves a partnership. Our Uniform Partnership Act, General Statutes § 34-39 et seq., further provides that "[w]hen any partner retires or dies, and the business is continued . . . without any settlement of accounts as between him or his estate and the person or partnership continuing the business, *unless otherwise agreed,* he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and *shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest . . . .*" (Emphasis added.) General Statutes § 34-80. In the present case, there was no explicit language in the 1969 or 1985 documents indicating that the partners intended the partnership to continue after the death of one of the partners. See *Gaess* v. *Gaess,* 132 Conn. 96, 100, 42 A.2d 796 (1945). Considering all of the circumstances surrounding the transaction, therefore, we conclude that it was the intent of the parties that upon the death of either the defendant or his brother, the partnership would dissolve and, in compliance with § 34-80, the surviving partner be required to purchase the deceased partner's interest in the partnership.

II

The defendant's second claim is that the trial court improperly determined that only he, without contribu-

tion from the other four partners, was obliged to purchase the plaintiff's interest in the partnership. We disagree.

We note that the amended buy and sell agreement allotted shares of the partnership interest to these four individuals[2] and distinguished them from the "original partners" in paragraph one of that document. Even if we assume that they are partners, however, we agree with the trial court's determination that only the defendant is obliged to purchase the plaintiff's interest in the partnership.

It is a basic tenet of partnership law that when carrying on the partnership business, a partner has the authority to bind the entire partnership. General Statutes § 34-47; see also *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 521, 590 A.2d 438 (1991). The execution of the amended buy and sell agreement, however, did not relate to the carrying on of the partnership business. The agreement, therefore, is governed by the principles of contract law, which provide that "[a] contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." (Internal quotation marks omitted.) *Pavliscak* v. *Bridgeport Hospital*, 48 Conn. App. 580, 596, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998). The mere fact that the defendant believed that the other four partners were bound by the amended buy and sell agreement, without any evidence that they intended to be bound by it, does not bind them to the agreement. See id. Here, the amended agreement

---

[2] General Statutes § 34-314 provides in relevant part: "Formation of partnership. (a) Except as otherwise provided in subsection (b) of this section, the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Subsection (c) of the statute provides in relevant part: "(3) *A person who receives a share of the profits of a business is presumed to be a partner in the business* . . . ." (Emphasis added.)

states that it was executed during a meeting at which only the defendant and his brother were present. Theirs are the only signatures on the document. There is no evidence that the other four partners assented to its terms or were even aware of its existence. Further, we are not convinced by the defendant's argument that the mere use of the word "any" in the phrase "[u]pon the death of *any* partner" in paragraph four, obliged all of the surviving partners to buy out the plaintiff's interest in the partnership. Since it was only the defendant and his brother who executed the amended buy and sell agreement, we conclude that "any partner" was only intended to bind those two partners.

Finally, the defendant's claim that § 34-80 obliges all five surviving partners to purchase the plaintiff's partnership interest is without merit. As we have stated, § 34-80 provides that unless it is otherwise agreed, upon the death of a partner, the person or partnership continuing the business shall purchase the deceased partner's interest in the partnership. We concluded that since there was no indication that the partners intended for the partnership to continue after the death of a partner, § 34-80 would require the partnership to purchase the deceased brother's partnership interest. It was clearly "otherwise agreed," however, as manifested by the original and amended buy and sell agreements between the defendant and his brother, that the deceased partner's interest must specifically be purchased by the surviving brother, as partner. Therefore, as provided for in § 34-80, the words of the buy and sell agreement are given precedence over the general rule in § 34-80 that the entire partnership must purchase the deceased partner's interest in the partnership.

The judgment is affirmed.

In this opinion the other judges concurred.