[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 23, 1999, the court heard evidence at a trial regarding the complaint of the plaintiffs, Robert Lefevre and Steve Gelinas, against the defendant, L.K. Construction Services, Inc., for breach of contract, unjust enrichment, quantum meruit, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The defendant counterclaims for breach of contract.
The court finds the following facts. The plaintiffs are self-employed duct craftsmen. The defendant was, in December 1995, a new corporation whose first project was to provide labor for the installation of new ductwork at Backus Hospital in Norwich. The defendant's general manager, David Kennedy, had worked with and supervised the plaintiffs during the past ten years, and the three were friends. Kennedy contacted the plaintiffs in December 1995 to find out if the were interested in working on this project. The job required the removal of old ductwork and the installation of new ductwork in a section of the hospital known as the E-wing. Kennedy estimated the E-wing phase would entail 1,360 hours of labor.
The plaintiffs were interested and submitted a proposal to CT Page 2891 the defendant. The defendant rejected the proposal as too costly. Kennedy prepared a counteroffer whereby some of the work at E-wing would be performed by a third workman, at a cheaper cost, and by Kennedy himself, The plaintiffs and the third worker would each perform 420 hours and Kennedy would work the remaining 100 hours. The E-wing installation was to be completed by June 1, 1996. The counteroffer dated January 19, 1996, proposed compensation for the plaintiffs of $22 per hour for 420 hours each for a total of $9,240 each rounded up to $10,000 per man.
The counteroffer was handwritten on a blank sheet by Kennedy. This document was, unsigned and makes no reference to any parties. (Exhibit B.)
No formal or explicit acceptance of this offer occurred. The plaintiffs, however, worked on the project regularly from January 3, 1996, before the counteroffer, to June 1, 1996. On January 29, 1996, the defendant issued purchase orders to the plaintiffs for the E-wing work These orders indicated that the plaintiffs were responsible for installing ductwork in accordance with certain plans at a payment rate of $22 per hour up to 420 hours. (Exhibits C and G.) The orders also note that additional labor might be necessary, not to exceed 260 hours, that the plaintiffs were to submit weekly time slips to the defendant, and that the plaintiffs were to secure insurance coverage certification. These orders were signed by Kennedy. The orders lack any mention of the $10,000 per person compensation which was contained in the counteroffer made ten days earlier.
Neither plaintiff submitted time slips, and none was requested by the defendant's agents. Instead, each plaintiff submitted progress invoices on various dates indicating that a certain percentage of the project had been completed and requesting payments commensurate with that percentage of the $10,000 figure. The defendant honored these invoices up to the point where 80% of the work for E-wing was finished, that is, each plaintiff received a total of $8,000 plus $800 for demolition work previously accomplished.
The third installer was frequently utilized by the defendant on phases of the project besides the E-wing. His contribution to the E-wing portion never approached the 420 hours allocated to him. As a result, the plaintiffs labored more than 420 hours a piece to make up for this deficit. Concerned about compensation for these excess hours, the plaintiffs inquired of Kennedy. CT Page 2892 Kennedy assured the plaintiff that everything would work out fairly in the end Kennedy knew that the plaintiffs continued to work on the E-wing phase, although no express approval or authorization was sought by the plaintiffs nor given by the defendant for labor provided beyond 420 hours.
On June 1, 1996, the E-wing installation was complete except for one to two weeks work. Kennedy informed the plaintiffs that, due to a materials error and engineering changes, work or the E-wing area would be suspended until these difficulties were cleared up, which, in his estimation, would take about two weeks. The plaintiffs informed Kennedy that they had taken on other work but could complete the job at the hospital if they worked nights and weekends Kennedy told them he would contact them when work in the E-wing area might resume.
Instead, Kennedy offered the remaining ductwork installation to another installer at $22 per hour. That arrangement fell through, and the defendant paid Kennedy and two other employees $5,600 to finish the installation. The project was completed around June 10, 1996.
The plaintiffs contend that they each had a contract with the defendant which provided that each plaintiff would receive $10,000 for 420 hours of labor and $22 per hour for every hour beyond 420 up to 680 hours total. The defendant, on the other hand, contends that the contract was that the entire job would be completed for $10,000 each, notwithstanding the actual hours worked.
 I
The first count of the complaint alleges breach of an express contract. The party asserting a breach of an agreement bears the burden of proving the agreement existed and its terms. Ferrie v.Sperry, 85 Conn. 337, 342 (1912). For a contract to exist, there must be a meeting of the minds as to the terms of the agreement.Hirschfeld v. Hirschfeld,, 50 Conn. App. 280, 287 (1998). A "meeting of the minds" is defined as a mutual agreement and assent of the parties to the substance and terms of the contract.Sicaras v. Hartford, 44 Conn. App. 771, 784 (1997).
The court finds no meeting of the minds occurred between these parties as to the method of and amount of compensation for the labor needed to install ductwork for the E-wing area. The CT Page 2893 documents proffered by the parties fail to evince a mutual understanding of the terms of any purported agreement. The plaintiffs began work on January 3, 1996. The counteroffer was made January 19, 1996, and is unsigned and fails to identify any participants. If conflicts with the defendant's purchase orders of January 29, 1996, as to whether the compensation for the plaintiff was based on hours worked or a set price.
The plaintiffs began working and continued to work in the hope that an agreement would evolve. This hope was based on the good previous work relationship with Kennedy and their friendship. Unfortunately, that friendship and hope caused each side of this litigation to believe, erroneously, that its view of the method of calculating compensation was understood and acceptable to the other.
At times the plaintiffs acted as if a set price of $10,000 applied, such as when they submitted invoices requesting progress payments based on percentage of work completed. At other times, they acted consistently with an hourly basis for compensation, such as when they voiced concern to Kennedy over the mounting hours.
The defendant behaved equally equivocally. The defendant submitted purchase order clearly based on hourly rate compensation, yet it paid the plaintiffs on a basis of percentage of job completion for a $10,000 set price. The defendant never demanded weekly time slips despite that provision in the purchase orders.
The court concludes that the parties never achieved a meeting of the minds as to the method of calculating payment for the labor expended by the plaintiffs for the E-wing phase of the defendant's project. Having failed to prove, by a preponderance of the evidence, that a contract existed, no breach of contract is established. The court finds for the defendant on the first count.
 II
Similarly, the defendant cannot its counterclaim which is also premised on breach of contract. The court finds for the plaintiffs on the counterclaim.
 III CT Page 2894
The second and third counts of the complaint allege unjust enrichment and quantum meruit, respectively. Both doctrines allow recovery to restore to a party that which benefitted [benefited] another without a contract at the expense of that party. Burns v.Koellmer, 11 Conn. App. 375, 383 (1987).
Unjust enrichment applies where the benefit conferred was money or property, while quantum meruit applies when the benefit was labor or services. Id., 384. In the present case no goods or money were supplied by the plaintiffs. Consequently, the doctrine of unjust enrichment is inapplicable. The court finds for the defendant on the second count.
The plaintiffs did, however, expend many hours of labor allowing the defendant to meet its obligations to its general contractors. Although each plaintiff claims 650.5 hours of work spent on the E-wing installation and demolition work, the court finds they have proven only 570 hours of labor. Gelinas' daily worklog (Exhibit E) relied on by both plaintiffs, admits this figure. The 650.5 hours amount incorrectly includes hours worked by the plaintiffs on other phases of the defendant's project in the C-wing portion of the hospital.
A reasonable rate of compensation for the benefit conferred by the plaintiffs is $22 per hour. That is the hourly rate which the defendant offered to the plaintiff and at least one other installer. It is also the rate at which the plaintiffs were compensated for similar work in the C-wing area and unrelated projects for the defendant. The defendant concedes that the work done by the plaintiffs was sound and without fault.
Using this rate and number of hours, the defendant obtained from each plaintiff a benefit of $12,540 (570 hours times $22 per hour). Each plaintiff has already received $8,800 from the defendant. As a result, the court finds for the plaintiffs on the third count for the difference between $12,540 and $8,800, viz. $3,740 for each plaintiff. The court awards no prejudgment interest under G.S. § 37-3a because the defendant paid substantial sums to the plaintiffs in a timely fashion and the discrepancy was due to mutual misunderstanding.
 IV
In the fourth count of the complaint the plaintiffs allege a CT Page 2895 CUTPA violation. The court finds no evidence that the defendant engaged in any unfair methods or unfair or deceptive acts or practices, as required by G.S. § 42-110b, in the conduct of their business. This was the defendant's first project. The difficulties between the parties was the product of innocent misunderstanding and unwarranted assumptions rather than sharp dealing. Also, the plaintiffs abandoned this claim by failing to mention it in their argument. The court finds for the defendant on the fourth count.
Judgment may enter for each plaintiff against the defendant in the amount of $3,740 plus costs.
Sferreza, J.